**In re VICTOR BREWING CO.**

No. 20938.

District Court, W. D. Pennsylvania.

Feb. 1, 1944.

J. Raymond Sowash, of Greensburg, Pa., referee.

Sachs & Caplan, of Pittsburgh, Pa., for Bankrupt.

Fred B. Trescher and Kunkle, Trescher & Snyder all of Greensburg, Pa., for Glass City Bank.

Chas. F. Uhl, U. S. Atty., of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Homer R. Miller, Sp. Assts. to Atty. Gen., for the United States.

SCHOONMAKER, District Judge.

This case is now before this court on certificate to review an order of J. Raymond Sowash, Referee in Bankruptcy, made on April 9, 1943. This order directed payment out of the funds of the bankrupt estate in the sum of $3,228.53 awarded to one Frank A. Maddas, as Receiver in the State Courts of Pennsylvania of said Victor Brewing Company: (1) To the First National Bank of Greensburg, Pennsylvania, to satisfy a note in the sum of $800 given by Maddas to that bank on April 1, 1941, and secured by an assignment from said Maddas to said bank of his fees as such receiver to the extent of $2,530.08; and (2) the balance of said fund of $3,228.53 remaining after the payment of said note of First National Bank of Greensburg, to the Collector of Internal Revenue to apply on account of the lien of the United States for 1936 Federal income taxes assessed against said Maddas.

The United States has filed a petition to review this order, claiming that the entire sum of $3,228.53 awarded to Maddas as receiver should be paid to the Collector of Internal Revenue to apply on Federal income-tax liens against Maddas.

The Glass City Bank, a claimant of said fund by reason of an attachment-execution issued February 19, 1941, out of the Court of Common Pleas of Allegheny County, Pennsylvania, on a judgment entered in said court against said Maddas in the sum of $19,041.75, by which said bank sought to attach said fund due Maddas as receiver —also seeks a review of said order, claiming the entire fund should be awarded to that bank.

The facts involved are not in dispute, and may be briefly stated as follows:

Maddas was appointed equity-receiver of the Victor Brewing Company in proceedings in the Court of Common Pleas of Westmoreland County, Pennsylvania, and served in that capacity from December 28, 1938, to October 22, 1940.

On October 4, 1940, a petition was filed in this court against the Victor Brewing Company for a reorganization under Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 501 et seq. On January 31, 1941, the debtor was adjudicated a bankrupt.

On June 13, 1941, Maddas filed an application in this court for an allowance of receiver's fees. The Referee allowed him a total of $15,000 for his services, of which $11,771.47 had been previously paid him through order of the Common Pleas Court, leaving a balance due of $3,228.53, which is now held by the Trustees in Bankruptcy.

The Glass City Bank of Jeannette, Pennsylvania, obtained a judgment against Maddas on February 15, 1941, in the Court of Common Pleas of Allegheny County for $19,041.75. On February 21, 1941, this bank issued an attachment-execution out of said court summoning the Trustees of the Victor Brewing Company as garnishees. This attachment-execution issued without leave of this court. The Trustee in Bankruptcy opposed the garnishment proceedings and filed an application in this court to enjoin the proceedings. Prior thereto, on October 23, 1940, this court had entered an order, reading in part as follows:

"All suits pending against the debtor and its property are hereby stayed until such final decree in these proceedings and the commencement of any suit against the debtor or the Trustee or any suit or proceedings to enforce a lien upon the property of the debtor, is hereby enjoined. All creditors and stockholders of the debtor and all persons whomsoever are hereby

enjoined and restrained in any manner whatsoever from interfering with money, property or assets of which the trustees shall be entitled to take possession, and from interfering in any manner with the discharge by the trustees of their duties and the management of the business and property of the debtor, and from interfering in any manner during the pendency of this proceeding with the exclusive jurisdiction of this Court over the debtor and such property and assets."

On April 2, 1942, this court enjoined the Glass City Bank from proceeding with its attachment proceedings. Later, the Glass City Bank again sought leave to proceed with its attachment proceedings, but on April 29, 1942, this application was denied.

On April 3, 1941, Maddas executed a note to the First National Bank of Greensburg for $800; and as collateral security, he gave the bank a written assignment of even date covering the receiver's fees due him to the extent of $2,530.08.

The Government has Federal income-tax claims against Maddas as follows:

on its liens for the years 1920, 1921, and 1922, which amount to more than $1,-000,000. The Collector of Internal Revenue received the assessment lists of these taxes on August 12, 1935. Notice and demand for payment was made by the Collector on August 13, 1935, and August 24, 1935. The lien of the United States arose on the date the Collector received the assessment lists. See 26 U.S.C.A. Int.Rev. Code, § 3671; MacKenzie v. United States, 9 Cir., 109 F.2d 540; Filipowicz v. Rothensies, D.C., 31 F.Supp. 716.

Notices of tax liens for these taxes for the years 1920, 1921, and 1922, were filed on July 27, 1939, and July 29, 1939, and long before the assignment from Maddas to the First National Bank. These liens continue until they are paid, and attach to after-acquired property. See Citizens National Bank of Los Angeles v. United States, 9 Cir., 135 F.2d 527, 528. There the court said: "The statute provides that the United States shall have a lien upon 'all property' belonging to the taxpayer. There is no limitation placed on the expression in the statute 'the amount

| Years | Amounts | Dates Assessed | Balance Due |
|---|---|---|---|
| 1920 | $908,490.37 | August 10, 1935 | $671,987.07 |
| 1921 | 476,050.51 | August 10, 1935 | 108,291.80 |
| 1922 | 392,452.98 | August 10, 1935 | 478,392.13 |
| 1936 | 9,129.72 | January 17, 1941 | 9,129.72 |

The balance $392,452.98 does not include accrued interest.

For the years 1920, 1921, and 1922, the Collector received the assessment lists on August 12, 1935. Notices and demands were made on August 13, and August 24, 1935. Notices of tax lien were filed with the Prothonotary, Westmoreland County, Pennsylvania, on July 29, 1939, and with the Clerk of the United States District Court on July 27, 1939.

The Collector received the assessment list covering the 1936 taxes on January 20, 1941. First notice and demand was made on January 21, 1941; and second notice and demand was made on February 3, 1941. Notices of tax liens were filed with the Clerk of the United States District Court on April 4, 1941, and with the Prothonotary, Westmoreland County, Pennsylvania, on April 7, 1941.

On these facts we are of the opinion that the entire fund in dispute should have been awarded to the United States

* * * shall be a lien * * * upon all property and rights to property.' That this expression is not limited to property possessed by the debtor at the time the distraint is laid is plainly indicated by the provision of the statute that the lien 'shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time,' an amendment made by § 613 of the Revenue Act of 1928 [26 U.S.C.A. Int.Rev.Acts, page 461]. Formerly, the statute decreed that the lien was in effect 'until paid.' If the lien is not considered as applying to after acquired property, the amendment is meaningless, for the lien would continue in any event as to property owned when the lien arose." See also Nelson v. United States, 9 Cir., 139 F.2d 162, opinion filed November 23, 1943, holding that after-acquired property of a delinquent taxpayer is subject to the tax-lien of the Government.

The Treasury Department has consistently applied this statute to give the

Government a lien on after-acquired property. See T.D. 4275, VIII-2 Cum.Bull. 167 (1927); Graves v. Commissioner, 12 B.T.A. 124, 132, 133.

In such a situation, Congress must be taken to have approved the administrative construction, and thereby given it the force of law. See Helvering v. Reynolds Co., 306 U.S. 110, 115, 59 S.Ct. 423, 83 L.Ed. 536.

■ We therefore conclude that as between the United States and the First National Bank of Greensburg, the United States is entitled to the entire fund allotted to Maddas for his services in the State Court Receivership proceedings.

The Referee relied largely on United States v. Long Island Drug Company, 2 Cir., 115 F.2d 983, as sustaining his conclusion that the First National Bank's assignment had priority over any claim of the Government. We are of the opinion this case does not support his conclusions, because the taxpayer in that case had made a contract with the Long Island Drug Company by which his future wages were to be applied to a note of $40,000 which the taxpayer and his wife had given the Drug Company. The court held that, since the taxpayer had assigned his wages before they fell due and had no wages legally due him for his work at the time the levy was made against the Drug Company, there was nothing on which levy could be made. In the instant case, Maddas was concededly entitled to fees as receiver in the receivership case pending in the State Court. The Government's lien for taxes for these years 1920, 1921, and 1922, accrued long before the assignment to the First National Bank.

In the case of United States v. Warren R. Company, 2 Cir., 127 F.2d 134, the court held that the Government's lien right attached to future rentals, even though under the terms of the lease the rentals were payable to the shareholders instead of the corporation. The Referee undertook to distinguish the Warren Railroad case from the case at bar, on the ground that in the Warren case there was a lease in existence out of which future rentals would be payable, whereas in the instant case Maddas had no property right in future earnings. We cannot agree with this reasoning. In the Warren Railroad case there was a lease in existence at the time the lien arose, which would probably produce future rentals. In the case at bar, Maddas was an equity-receiver under order of court at the time the lien arose; and there was the same probability that as long as that receivership continued, future earnings would result from the employment of Maddas as such receiver.

■ As to the claim of the Glass City Bank, which arose out of an attachment-execution issued out of the Court of Common Pleas of Allegheny County, Pennsylvania, we are of the opinion that the Referee properly disallowed this claim. Maddas's fees as receiver are exempt from attachment-execution under the provisions of the Pennsylvania Act of April 15, 1845, P.L. 459, 42 Purdon's Stat. § 886. See Bell v. Roberts, 150 Pa.Super. 469, 28 A. 2d 715.

■ Even if the Glass City Bank were entitled to issue an attachment-execution against Maddas's salary, its proceedings to that end are of no avail, because it was denied permission by this court to proceed with its attachment-execution.

■ In addition to all that, the tax liens of the Government are superior to any claim the Glass City Bank might have had, for notices of the Government liens for taxes were filed before the Bank secured its judgment and issued its attachment-execution.

The order of the Referee, so far as it awarded to the First National Bank of Greensburg any part of the fund in controversy, is reversed; and the entire fund will be ordered paid to the Collector of Internal Revenue. The Referee's order denying the claim of the Glass City Bank will be affirmed.

An order in accordance with this opinion may be submitted on notice to opposing counsel.