## GLASS CITY BANK v. UNITED STATES.

No. 50.   Argued October 15, 16, 1945.—Decided November 13, 1945.

*Mr. Fred B. Trescher* for petitioner.

*Mr. Ralph F. Fuchs,* with whom *Solicitor General Mc-Grath, Assistant Attorney General Clark, Messrs. Sewall Key, J. Louis Monarch* and *Miss Helen Goodner* were on the brief, for the United States.

MR. JUSTICE BLACK delivered the opinion of the Court.

In 1941 the petitioner bank obtained a judgment in a Pennsylvania State Court against one Frank A. Maddas, for about $19,000.00. The United States had unpaid, judicially established, income tax claims against Maddas for the years 1920, 1921, and 1922,[1] which exceed

---

[1] There is also a claim for 1936 taxes which raises different questions that need not be considered here.

$1,000,000.00. 40 B. T. A. 572; 114 F. 2d 548. Because of Maddas' past services as a State court receiver of a brewing company, the trustee of that company, now in bankruptcy, owes Maddas $3,228.53. The issue here is whether the bank or the government may recover on the debt owed to Maddas. The bank claims under a lien alleged to have been created by an attachment-execution issued on its State court judgment and served on the trustee in bankruptcy February 21, 1941. The United States claimed priority, by virtue of a tax lien under 26 U. S. C., §§ 3670, 3671,[2] which both parties admit arose in 1935, five years prior to the taxpayer's services as receiver. The contention of the bank in the District Court[3] was that the statutory tax lien, which became effective in 1935, did not cover Maddas' claim since it did not exist when the lien arose but only thereafter, and that the government, therefore, could reach the debt only by garnishment or distraint as provided by other sections of the Internal

---

[2] "Sec. 3670. Property Subject to Lien.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"Sec. 3671. Period of Lien.

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Section 3672 provides that the lien shall not be valid against any mortgagee, pledgee, purchaser, or judgment creditor until notice is filed in an office designated by State law or in the office of the clerk of the United States District Court. Here such notice was duly filed.

[3] The District Court acquired jurisdiction because the indebtedness to Maddas was due from the trustee. The procedure by which that jurisdiction was acquired is sufficiently set forth in the opinions below and need not be repeated here. 54 F. Supp. 11; 146 F. 2d 831.

Revenue Code. The Circuit Court of Appeals concluded that the statutory tax lien did cover after-acquired property and accordingly affirmed the District Court's judgment for the United States. 146 F. 2d 831. We granted certiorari because of statements made in the opinions of other courts which seemed to conflict with the conclusion below. *United States* v. *Long Island Drug Co.*, 115 F. 2d 983; *United States* v. *Pacific Railroad*, 1 F. 97.

By § 3670, 26 U. S. C., Congress impressed a lien upon "all property and rights to property, whether real or personal, belonging" to a tax delinquent. Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes. Not content with this language, however, Congress also provided that the lien should "continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." 26 U. S. C., § 3671. These two sections read together indicate that a continuing lien covers property or rights to property in the delinquent's hands at any time prior to expiration. This is confirmed by § 3678, which provides that "whether distraint proceedings have been commenced or not," action to enforce the lien may be instituted against "any property and rights to property, whether real or personal, or to subject any such property and rights to property *owned by the delinquent,* or in which he *has* any right, title, or interest, to the payment of such tax." (Italics supplied.) For here is a plain intent to subject to the lien "property owned by the delinquent" when suit is filed, rather than only that owned when the lien arose. Indeed, the meaning of these sections is so plain as to render superfluous a detailed discussion of the legislative history which is consistent with our interpretation.[4]

Furthermore the agencies administering the statute have construed it in the same way. Thus, in 1928 Gen-

---

[4] 14 Stat. 98, 107; 15 Stat. 125, 167; 37 Stat. 1016; 45 Stat. 791, 875.

eral Counsel Memorandum No. 4715, VII–2 Cum. Bul. 94, declared that "a delinquent taxpayer may at any time prior to the expiration of the statutory period of limitation become possessed of property against which the lien may attach, thus making the tax liability enforceable through the lien." Again in Treasury Decision 4275, VIII–2 Cum. Bul. 167, Collectors were admonished to keep on the alert where notice of liens had been filed, so as to extend the period of their effectiveness "whenever it is reasonably possible that the taxpayer may, in the future, acquire property or property rights from which the tax liability may be satisfied." And in *Graves* v. *Commissioner*, 12 B. T. A. 124, 133, the Tax Board said that the lien applied, "of course, to all the property that the tax debtor subsequently acquires."

The bank's arguments on behalf of a statutory construction supporting its claims are without merit. We are told that to increase unduly the scope of the government's lien is unwise. But most of the objections raised would apply not merely to liens that cover after-acquired property, but also with equal force to most other types of liens. At any rate the wisdom of legislation is a question for Congress. We are further told that the tax lien cannot attach to Maddas' claim because the law of Pennsylvania, where this obligation arose, does not treat "future earning capacity" as "property or rights to property." But the question of whether the tax lien covers future earning capacity is not before us. For the government here seeks to reach an already existing obligation for services rendered, which clearly falls within the statutory language. Cf. *Matter of Rosenberg*, 269 N. Y. 247, 199 N. E. 206. Moreover, the Congressional meaning is not to be determined by resorting to the local law of Pennsylvania. *United States* v. *Snyder*, 149 U. S. 210; *Helvering* v. *Stuart*, 317 U. S. 154, 161–162.

Our conclusion is that the lien applies to property owned by the delinquent at any time during the life of the lien.

This is in accord with all the cases that have directly passed upon this question.[5]  As previously noted, there are two cases which contain language which might lead to another conclusion.  But nothing there said offers any persuasive reason for restricting the scope of the lien.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, dissenting.

I am unable to find in the applicable statutes the clear expression of Congressional intent which I think is required to extend the tax lien to after-acquired property. Under § 3670 the lien is imposed as to taxpayers delinquent after demand "upon all property and rights to property, whether real or personal, belonging to such person."  By § 3671 the lien arises, unless another date is specifically fixed by law, "at the time the assessment list was received by the collector" and continues "until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."  Nothing in these sections gives any indication that Congress intended the lien to reach after-acquired property.  The language used, whether in § 3670 or in § 3671, is fully satisfied if the lien is held to attach to property belonging to the taxpayer as of the time the lien arises.[1]  Had Congress intended to reach not only

[5] *Citizens National Bank* v. *United States*, 135 F. 2d 527 (C. C. A. 9); *Nelson* v. *United States*, 139 F. 2d 162 (C. C. A. 9); *Investment & Securities Co.* v. *United States*, 140 F. 2d 894 (C. C. A. 9); *United States* v. *Worley*, 64 F. Supp. 271 (S. D. Ind.); *Minnesota Mutual Life Ins. Co.* v. *United States*, 47 F. 2d 942, 944 (N. D. Tex.).  See also *United States* v. *Warren R. Co.*, 127 F. 2d 134; *Matter of Rosenberg, supra.*

[1] Although by § 3671 the lien "arises" as of the time the assessment list is received by the collector, it relates back to the time of notice and demand, § 3670, as against the taxpayer, though by virtue

every description of property then owned by the taxpayer, but also every species which might later come into his hands, clearer words than "all property" and "belonging to" were readily available to express this purpose. The harshness of the consequences, not only for the taxpayer but for others dealing with him, which this case dramatically exemplifies, gives reason beyond the ambiguity of the language used for thinking there was no such intent.

Nor is such an intent supplied by use of the present tense of the verb "has" in the final clause of § 3678 (a).[2] That section merely provides for the manner in which the lien defined by §§ 3670 and 3671 shall be enforced. Section 3678 (a), in my opinion, was not intended to add to the scope of the lien or extend its definition beyond the limits defined by those sections. If the lien was designed to reach after-acquired property, the alternative method specified in § 3678 (a) for reaching the property then owned by the debtor would seem to be redundant.

I find nothing in the legislative history which discloses any intention, more clearly than the words of the statute themselves, to include after-acquired property within the coverage of the lien. In the absence of clearer statutory foundation, the comparatively recent administrative con-

of § 3672 (a) it is not valid as against any mortgagee, pledgee, purchaser, or judgment creditor "until notice thereof has been filed by the collector" as provided.

[2] "Sec. 3678. Civil Action to Enforce Lien on Property.

"(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, and it has become necessary to seize and sell property and rights to property, whether real or personal, to satisfy the same, whether distraint proceedings have been commenced or not, the Attorney General at the request of the Commissioner may direct a civil action to be filed, in a district court of the United States, to enforce the lien of the United States for tax upon any property and rights to property, whether real or personal, or to subject any such property and rights to property owned by the delinquent, or in which he *has* any right, title, or interest, to the payment of such tax." (Emphasis added.)

struction cannot supply the required Congressional intent; and the scanty evidence of established and accepted practice is neither so wholly consistent nor so convincing as to furnish this necessary element.

Accordingly I would reverse the judgment and remand the cause to the Circuit Court of Appeals for the consideration and disposition of the issues presented to but not determined by it in view of its disposition upon the matters now determined here.

MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS join in this opinion.