## UNITED STATES v. PETTYJOHN et al.
### No. 5576.

United States District Court
W. D. Missouri, W. D.
March 11, 1949.

Sam M. Wear, United States Attorney, Omar E. Robinson, Walter W. Calvin, Wm. E. Kemp and Paul G. Koontz, all of Kansas City, Mo., for defendants.

REEVES, Chief Judge.

Plaintiff seeks a receivership in the above causes pursuant to the provisions of the several paragraphs of Section 3678, Title 26 U.S.C.A. relating to Internal Revenue, said section being a part of the Internal Revenue Code. The language of paragraph (d) of said section is as follows:

"In any such proceeding, at the instance of the United States, the court may appoint a receiver *to enforce the lien,* * * *. (Emphasis mine).

The lien mentioned is that provided for by Section 3670 of said Title 26 U.S.C.A. This section gives to the government a lien "upon all property and rights to property, whether real or personal, belonging to" * * * any person who may be liable to pay a tax and who has neglected or refused to pay the same after demand. And then, by Section 3671, the period of the lien is fixed as follows:

" * * * the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

This action is brought under said Section 3678, and that section is entitled, *"Civil action to enforce lien on property."*

The complaints contain appropriate recitals that assessments were made, even that a jeopardy assessment was made under Section 273 of said Title 26 U.S.C.A., and that notice was duly given to the defendants. Such assessments and notices were made in the early part of October, 1948.

It is on these facts that plaintiff insists upon its right to the appointment of a receiver as provided by said Section 3678. By paragraph (d) of said section it is provided specifically that the court "may appoint a receiver *with all the powers of a receiver in equity."* (Emphasis mine.)

It is to be noted that in the fore part of this paragraph the court may appoint a receiver to enforce the lien, and, if a receiver is appointed, such receiver may be clothed with all the powers of a receiver in equity. Naturally two questions arise here: First, whether a receiver should be appointed, and, second, whether, if appointed, he should be clothed with all the powers of a receiver in equity, as is well understood in equity jurisprudence.

It is the contention of the defendants, or some of them, that this court is without jurisdiction over the subject matter, for the two-fold reason that a part of the tax is in process of adjudication in the Probate Court of Jackson County, Missouri, and another part is in process of adjudication before the Board of Tax Appeals, commonly known as the Tax Court of the United States. After the assessments were made, and after notice given, one of the parties on the one branch of the claim of plaintiff filed a petition for review before the Board of Tax Appeals. This petition was filed after the middle of February, 1949.

Provision is made for appeals from deficiency assessments, as in these cases, by Section 272, Title 26 U.S.C.A., but such appeals shall be made "within ninety days after such notice is mailed." Within such period the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. The averments of the complaint, together with the evidence at the hearing, show conclusively that the petition was not filed until more than ninety days after the notice of the assessment was mailed. Moreover, the fact that they were actually jeopardy assessments, and made under the provisions of Section 273 of said Title 26 would not have warranted the defendants in resorting to the Board of Tax Appeals for a redetermination without complying with paragraph (f) of said Section 273. This paragraph requires that a bond be given within ten days after notice and demand, and only then would the taxpayer be entitled to have the Board of Tax Appeals pass on the

validity of the assessment and secure a re-determination of the amount. This was not done.

It is further contended by the defendants that a claim for a portion of the tax was filed in the Probate Court of Jackson County in the case of a deceased taxpayer, and, that, by submitting to the Probate Court the plaintiff is powerless to proceed in the manner followed in this case. All of these will be noticed.

1. As a postulate for a further consideration of the case it should be kept in mind that the sections authorizing this proceeding relate to the collection of the government's revenue. This action is a civil action brought under said Section 3678 to enforce a lien on property owned by the defendants, whether real or personal, and to subject any such property and right of property owned by the delinquent, or in which he has any right, title, or interest, to the payment of such tax.

■ It is a statutory proceeding. It is not an action brought in equity and founded upon equitable principles, but it is a statutory action to enforce a statutory lien and in the proceeding to enforce such lien a receiver may be clothed "with all the powers of a receiver in equity." Upon this statute it would make no difference whether there was insolvency or acts of bankruptcy, or, as opposed to these, the greatest prosperity of the delinquent taxpayers. Whatever the facts in this regard, under the statute a statutory receiver could be appointed to enforce the government's lien upon the property.

■ 2. In respect of a claim filed in the probate court, for a part of the tax claim, the plaintiff would not be precluded from enforcing its lien. It is not sought in this court to ascertain the amount of tax liability, but the object is to enforce a lien.

In the case of United States v. Ettelson, 159 F.2d, 193, 194, a claim was presented to the Cook County Probate Court in the State of Wisconsin, and was allowed by the Probate Court on February 9, 1939. A suit, precisely as in this case, was subsequently commenced, to wit, on April 3, 1944, "to enforce a lien for unpaid income taxes."

159 F.2d local citation 196 the court said regarding a similar objection:

"Furthermore, we agree with the District Court that the filing of the claim in the Probate Court against the estate of the deceased taxpayer was a *demand* of payment made at the only place that it could be made. That being so, the amount demanded was a lien upon all of the property of the taxpayer pursuant to Section 3670 of the Internal Revenue Code, * * *."

That is the precise situation in this case. One of the taxpayers having deceased, the only notice that could be lawfully given would be to file a claim in the probate court against the estate. Such action did not preclude this proceeding to enforce the lien of the government. Moreover there is no conflict of jurisdiction between the Probate Court of Jackson County, Missouri, and the Federal Court. The two courts are not attempting to afford a concurrent remedy.

In the case of United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 9, 10, there was an application for receivership, and the appeal was from an "order denying appellant's motion to dismiss the government's action under Section 3678 (supra) * * * to enforce the tax lien of the United States." The court followed the case of Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981, and epitomized the holding in that case by saying: "The Supreme Court, holding that the jurisdiction was not concurrent, refused to oust the federal court from control of the res." And then, 169 F.2d at local citation 12, the court aptly and succinctly characterized proceedings of this kind as follows:

"On the other hand, the suit of the United States is the formal foreclosing of its tax lien as prescribed by the statute designed for that purpose. *That lien is immune to state action.*" (Emphasis mine.)

Referring to the futility of a state receivership, the court said:

"If a receiver were appointed in the state proceeding and he were to attempt to sell the Kensington property, he would be unable to dispose of the federal lien."

■ 3. Counsel for Harry A. and Helen Pettyjohn has presented an able and extensive brief dealing with the subject of jurisdiction and the sufficiency of the complaint. Counsel seeks to apply the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487. An excerpt from that notable opinion is sufficient to show its inapplicability in this case. For instance, counsel quotes the following:

"Except in matters governed by the Federal Constitution or by *acts of Congress* (emphasis mine), the law to be applied in any case is the law of the State."

In the instant case we are dealing with Acts of Congress made pursuant to the Constitution of the United States. By Section 8, Article I of the Constitution, the Congress is clothed with power, "To lay and collect taxes," etc. And by the next to the last article of the original document, being Article VI, it is provided that, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, Any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

It would follow that these statutory provisions of the national government validly enacted by the Congress would prevail over all legislation and all decisions of the state courts. No state could make a law, and no judge of the state could interpret the law, so as to interfere with the government in the collection of its revenue.

In the case of Glass City Bank v. United States, 326 U.S. 265, loc. cit. 268, 66 S.Ct. 108, 110, 90 L.Ed. 56, the Supreme Court, in discussing statutory tax liens of the government, said "Moreover, the Congressional meaning is not to be determined by resorting to the local law * * *."

[5] Referring to the jurisdiction of the Tax Court and to the character of that important and highly respected court, the Congress has provided by Section 1100 of said Title 26 U.S.C.A.: "The Board of Tax Appeals * * * shall be continued as an independent agency in the Executive Branch of the Government."

And there is a further recital that such Board shall be known as "The Tax Court of the United States." By section 1101 the jurisdiction of that court is limited as follows: "The Tax Court and its divisions shall have such jurisdiction as is conferred on them by chapters 1, 2, 3, and 4 of this title, by Title II and Title III of the Revenue Act of 1926," etc.

And concerning the powers of the Tax Court, the Supreme Court, in Commissioner v. Gooch Co., 320 U.S. 418, 64 S.Ct. 184, 185, 88 L.Ed. 139, said: "The Board is but 'an independent agency in the Executive Branch of the Government,' and the legislative pattern of its jurisdiction is clear and unambiguous. The Board is confined to a determination of the amount of deficiency or overpayment for the particular tax year as to which the Commissioner determines a deficiency and as to which the taxpayer seeks a review of the deficiency assessment."

In the case of Snyder v. Commissioner, 6 Cir., 148 F.2d 385, cited by counsel for one of the defendants, the court said that, in making findings of facts in tax disputes and weighing the evidence in matters within its jurisdiction, such as reaching a determination as to whether the assessment as to the amount was correct, the findings of the Tax Court was conclusive. While the Tax Court performs judicial functions, nevertheless it is an administrative board within the Executive Branch of the Government, and its jurisdiction as an administrative board could in no case interfere with the jurisdiction of a district court to enforce the government's lien.

In the case of Shapero v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 811, 812, the Court of Appeals for the Sixth Circuit, made the following comment with respect to the Tax Court: "We are not in accord with the position taken by the tax court. Being an administrative tribunal and an independent agency within the Executive Branch of the Government, it should, in our judgment, have decided whether the Regulation and the Mimeograph do or do not, as a matter of law, apply to tax years prior to promulgation of the Commissioner's bulletins."

4. An overall view of the statutes relating to the collection of the government's revenue was expressed by the Tenth Circuit Court of Appeals in United States v. Barndollar & Crosbie, 166 F.2d 793, 794, as follows: "Considered together, these statutes are broad in their sweep, and they indicate a studied legislative purpose to secure the collection of taxes."

An action in that case had been brought precisely as in this case. The court upheld the right to maintain the action. The case was reversed and remanded for additional testimony for the reason that the appellate court was doubtful if the government's lien had been fairly protected.

■■ A painstaking examination of the statutes and authorities convinces that the government has a right to maintain this action, that no other court or board precludes the exercise of the fullest jurisdiction to enforce the government's liens. It is obvious from the hearing that agents of the government were fully warranted in asking for a jeopardy assessment. The controversy among the defendants shows that the government's revenue is in jeopardy. It is clear that the defendants, on their part, cannot work out or solve their problems while the lien of the government affects all of the property concerning which they make adverse and hostile claims.

In the light of the testimony, the operations of the company could not continue without peril to the tax and the government's lien. The facts in the case do not leave it to the discretion of the court whether a receiver should be appointed. It would be an abuse of discretion not to appoint a receiver. Moreover, the receiver should be clothed with all the powers of a receiver in a court of equity. This will be necessary in order to adjudicate on behalf of the government and the parties their rights. It is desirable to appoint a receiver who would be able to operate the company without interference or harm from conflicting claims of the defendants. It should be and will be the purpose of the court to conserve the properties, maintain the business as a going concern, and finally, when the rights of all the parties, including the interest of the government, have been conserved and satisfied, to turn the property back to the owners, as their interests may be adjudicated, in a healthy and prosperous condition, with its good-will preserved.

In view of the above a receiver will be appointed clothed with all the powers of a receiver in equity.