Taft, J.
Although, in its brief on its motion to certify, the state apparently conceded that the United States was entitled to all the unencumbered funds, the state contended in its brief on the merits and in argument on the merits that the lien which it claims by reason of the foregoing statutory provisions cannot be affected by the federal statutes. Since the United States does not claim to be entitled to any portion of the encumbered funds, these contentions of the state appear to necessarily represent an effort on the part of the state to participate in distribution of the unencumbéred funds. Although, under Section 12223-21, *293 General Code, “appeals * * * on questions of law shall be heard on assignments of error,” nothing in the assignments of error of the state in this court would justify an inference that it even intended by those assignments of error to suggest that there was any error in the decisions of the Common Pleas Court or of the Court of Appeals so far as they denied the state any right to participate in distribution of the unencumbered funds. Furthermore, the record does not disclose whether any part of the contributions due the state were, to use the language of Section 1345-4 (a) (4), General Code, “not paid when due” so that they might thereby “become a lien” before a sufficient amount of the tax claims of the United States had (pursuant to Sections 3670 and 3671, Title 26, U. S. Code) become liens, which in amount exceeded the amount of the unencumbered funds. Both the bank and the United States contend that the Common Pleas Court and the Court of Appeals were correct in awarding all the unencumbered funds to the United States and barring the state from participation therein. The bank would have no interest in contending that the-state had a right to participate in those unencumbered funds unless and until some decision which would otherwise permit the state to participate in the encumbered funds claimed by the bank. In our opinion, therefore, no question is presented for consideration on this appeal with respect to distribution of the unencumbered funds.
On this appeal, the United States has asserted no claim to the encumbered funds. But see United States v. Texas, 314 U. S., 480, 86 L. Ed., 356, 62 S. Ct., 350. It is apparently satisfied with the judgment of the Court of Appeals.
We have, therefore, a controversy limited to a determination of whether the state may claim as against the bank any part of the encumbered funds.
*294 The state bases its appeal on the provisions of Section 1345-4 (a) (4), G-eneral Code, which are, so far as pertinent:
“Any contribution, interest or penalty required to be paid under the Unemployment Compensation Act by any employer shall, if not paid when due, become a lien upon the real and personal property of such employer.
“Upon failure of such employer to pay the contributions required to be paid under' the Unemployment Compensation Act, the administrator of the Bureau of Unemployment Compensation of Ohio shall file notice of such lien, for which there shall be no charge, in the office of the recorder of the county in which it is ascertained that such employer owns real estate and personal property, or either, and such lien shall not be valid as against the claim of any mortgagee, pledgee, purchaser, judgment creditor or other lien holder of record at the time such notice is filed. * * *
“In the event of a distribution of an employer’s assets, pursuant to an order of any court under the law of this state, including any receivership, assignment for benefit of creditors, adjudicated insolvency, or Similar proceedings, contributions then or thereafter due shall have the same'priority as now provided by law for the payment of taxes due the state of Ohio and shall be paid out of the trust fund in the same manner as provided for other claims for unpaid taxes due the state.” (Emphasis added.)
Under the wording of the first of the foregoing three quoted paragraphs, when the contributions of defendant corporation were “not paid when due,” they were to “become a lien upon the real and personal property of such employer.” Under those words, those unpaid contributions became a lien upon the personal property later mortgaged to the bank.
Under the words of the second of those three para *295 graphs of that statutory section, “such lien shall not be valid against the claim of any mortgagee, pledgee, purchaser, judgment creditor or other lien holder of record at the time * * * notice [thereof] is filed.” Such notice was filed February 2, 1950. The bank was not even a mortgagee at that,time and not until sixteen days thereafter. Prior thereto, the mortgaged property belonged to defendant corporation and, under the words of the first paragraph hereinbefore quoted from Section 1345-4 (a) (4), the claim of the state “had become a lien upon” such property as “personal property of such employer.” The necessary implication from the words of the second paragraph, hereinbefore quoted from that section, is that the lien provided for by the first paragraph of the section shall be valid as against the claim of a mortgagee such as the bank, which was not of record at the time the state filed its notice of lien.
The words of the third of those three paragraphs of that statute were apparently intended by the Greneral Assembly to provide for those instances where protection to the state had not been provided for by the words of the first two of those three paragraphs.
The bank argues that the state cannot obtain such a lien on personal property without either a distraint and seizure of or a levy on particular property. However, the statute says that it does and our attention has not been called to statutory provisions requiring any such further action for the perfection of this particular lien as a lien on the personal property of defendant corporation, which was later mortgaged to the bank.
Ordinarily, the existence, extent, operation and requirements of a statutory lien are as specified in the statutes providing for such a lien. See McCormick v. Alexander, 2 Ohio, 65, 71; Lessee of Sellers v. Corwin, 5 Ohio, 389, 403, 24 Am. Dec., 301; Davidson v. Root, 11 *296 Ohio, 98, 100, 37 Am. Dec., 411; Lessee of Corwin v. Benham, 2 Ohio St., 36, 39; Kilbreth, Trustee, v. Diss, 24 Ohio St., 379, 383, 385; Tucker v. Shade, 25 Ohio St., 355.
Usually, but not always, in providing for statutory liens on personal property, legislation does require distraint and seizure of or a levy on particular property in order to perfect the lien. See 31 American Jurisprudence, 23, Section 308. There are sound reasons of policy why it should. But the question whether there should be such requirements is ordinarily a legislative and not a judicial question.
The bank further argues that the lien of the state was only a general lien and cannot operate as a specific lien on any personal property of- defendant corporation so as to prevail over the specific lien which the bank had by reason of its chattel mortgage on the tools and equipment of defendant corporation.
However, a judgment lien before levy of execution on specific real property under some statutes represents merely a lien on the real property of the judgment debtor generally and not a lien on any specific real estate. Nevertheless, where the statutes with respect to such a lien so provide, such a judgment lien will prevail over the interests of a subsequent mortgagee or purchaser of specific real estate of the judgment debtor. Myers v. Hewitt, 16 Ohio, 449. See 23 Ohio Jurisprudence, 912, Section 651. Here again, the question, whether a statutory lien on property generally should prevail over a specific lien on particular personal property, is ordinarily a legislative and not a judicial question.
Of course, the General Assembly may not exceed its legislative powers in enacting statutes providing for liens. However, in the instant case, since the property involved was at all times located in the county where notice of the state’s lien was filed, the General *297 Assembly had power to provide by statute in a proper case for imposition of a lien thereon and the perfection of such lien by filing notice thereof in that county. Furthermore, to the extent that property is owned by an employer, the General Assembly likewise has power to impose by statute a lien thereon to secure unemployment contributions due from such employer to the state. See 33 American Jurisprudence, 437, Section 36.
A comparison of language strongly suggests that the three paragraphs, hereinbefore quoted from Section 1345-4 (a) (4), General Code, may well have been patterned after three sections of the federal statutes, viz., Sections 3670 and 3672, Title 26, and Section 191, Title 31, U. S. Code.
In Glass City Bank v. United States, 326 U. S., 265, 90 L. Ed., 56, 66 S. Ct., 108, it was held that the United States had a prior lien against an indebtedness, due to a delinquent taxpayer, under Section 3670, Title 26, U. S. Code, which read so far as pertinent:
“If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.”
In the opinion of the court by Mr. Justice Black, it is stated:
“Because of Maddas’ past services as a state court receiver of a brewing company, the trustee of that company, now in bankruptcy, owes Maddas $3,228.53. The issue here is whether the bank or the government may recover on the debt owed to Maddas. The bank claims under a lien alleged to have been created by an attachment-execution issued on its state court judgment and served on the trustee in bankruptcy February 21, 1941. The United States claimed priority, by virtue of a tax lien under 26 U. S. C., Sections 3670, *298 3671, which both parties admit arose in 1935, five years prior to the taxpayer’s services as receiver. * * *
“By Section 3670, Title 26 U. S. C., Congress impressed a lien upon ‘all property and rights to property, whether real or personal, belonging’ to a tax delinquent. Stronger language could hardly have been selected to revteal a purpose to assure the collection of taxes * * *
Í < # # #
“ * * * We are told that to increase unduly the scope of the government’s lien is unwise. But most of the objections raised would apply not merely to liens that cover after-acquired property, but also with equal force to most other types of liens. At any rate the wisdom of legislation is a question for Congress. * * * ”
The concurring opinion of Mr. Justice Jackson in United States v. Security Trust & Savings Bank, Exr., 340 U. S., 47, 95 L. Ed., 53, 71 S. Ct., 111, gives an interesting history of the literal enforcement of the federal statutes, after which the first two of the paragraphs hereinbefore quoted from Section 1345-4 (a) (4), General Code, were apparently patterned. With respect to Section 3672, Title 26, U. S. Code, which is quite similar to the exclusion provisions in the second of those hereinbefore quoted paragraphs, Mr. Justice Jackson states:
“My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interest which it specifically included in the statute and no others.”
We agree with the bank that the enforcement in accordance with their terms of the lien provisions, hereinbefore quoted from Section 1345-4 (a) (4), General Code, may have serious consequences. However, since the General Assembly has enacted those provisions, it is the duty of the courts to enforce them and not to revise them to read as the court would have had them read if it had enacted them.
*299 The Court of Appeals in its opinion recognized that the state, by filing its notice of a lien in the office of the recorder of Marion county prior to the time of the filing of the chattel mortgage of the bank, acquired and perfected a lien for the unpaid contributions upon all the real and personal property of the defendant, including the chattels thereafter covered by the chattel mortgage to the bank. However, the Court of Appeals stated that, “as the state had a lien covering both the chattel property on which the bank had its chattel mortgage and all the unencumbered property belonging to defendant, the bank had the equitable right to insist that the state first exhaust the unencumbered property of the defendant in payment of the lien of the state before resorting to the chattel property covered by the bank’s mortgage. ’ ’ Of course, the difficulty with this reason for denying the state any rights against the property mortgaged to the bank is that, after the Court of Appeals had awarded to the United States all of the unencumbered property, there was nothing left of such unencumbered property for the state to exhaust.
The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings.

Judgment reversed.

Weygandt, C. J., Middleton, Matthias, Hart, Zimmerman and Stewart, JJ., concur.