**SHERMAN B. RUTH, Inc.**

v.

**THE O.S.V. MARIE and WINIFRED.**

No. 53–69.

United States District Court
D. Massachusetts.

Sept. 16, 1957.

Philip Tartas, Gloucester, Mass., for plaintiff and intervening petitioner, Cape Ann.

Robert G. Hennemuth, Law Dept. Raytheon Mfg. Co., Waltham, Mass., for petitioner Raytheon Mfg. Co.

Anthony Julian, U. S. Atty., Asst. U. S. Atty. John M. Harrington, Jr., Boston, Mass., for petitioner The United States.

Richard D. Sears, III, Boston, Mass., for libellant.

FORD, District Judge.

Following the previous opinion in this case (D.C., 150 F.Supp. 630), the United States moved for rehearing and the taking of additional evidence. At the time of hearing on this motion the court also received provisionally the evidence offered by the parties. The motion for rehearing is now allowed and the evidence then taken is admitted.

The evidence offered by the United States consisted of an explanation by the Chief of the Accounts Section of the Office of the Director of Internal Revenue at Boston of the meaning of certain symbols or marks appearing on the ledger cards from that office previously admitted in evidence and pertaining to the tax accounts of Sherman B. Ruth, Inc. and Cape Ann Machinery Co. From these notations it appears that the regular notice and demand forms were mailed to the respective taxpayers prior to the recording of the notices of tax lien in Essex County. The general manager of the two corporations testified that he did not recall receiving any tax notice addressed to the corporations earlier than 1952 or 1953, but would not say no such notice had been received earlier.

On the basis of this evidence further findings must now be made as to the claim of the United States based on its tax liens against Ruth and Cape Ann, which were rejected in the previous

opinion on the ground that there did not then apppear to be any evidence of a demand on the taxpayer.

On February 28, 1950, the Commissioner of Internal Revenue assessed against Sherman Ruth, Inc. the sum of $6,549.46 for income taxes for the fiscal year ending February 28, 1950. Demand for payment was made on November 3, 1950, and notice of the tax lien recorded on September 11, 1951. An outstanding balance of $4,615.29 is due on this assessment.

Assessments were made against Cape Ann Machinery Co. in the amounts of $2,714.97 for income tax for 1947, $3,-113.02 for income tax for 1948, and $1,-495.17 for withholding tax for the quarter ending March 31, 1951. Demand for the 1947 tax was made on October 17, 1949, and notice of tax lien recorded on August 2, 1950. An outstanding balance of $2,436.28 is due on this assessment. Demand for the 1951 withholding tax was made on August 31, 1951, and notice of tax lien recorded December 7, 1951. A balance of $1,495.-17 remains due on this assessment.

 Sherman Ruth claims liens on the Marie and Winifred for supplies furnished to the vessel in the amount of $1,285.75 for 1951 and $10,366.69 for 1952. Cape Ann claims liens against the vessel for supplies and repairs to the extent of $1,914.88 for 1952 and $2,708.95 for 1953. These maritime liens were property of these corporations to which the government's tax liens attached, The John G. Stevens, 170 U.S. 113, 117, 18 S.Ct. 544, 42 L.Ed. 969, even as to maritime liens arising after the tax liens arose but while they were still in effect. Glass City Bank of Jeannette, Pa. v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56. Hence the United States by virtue of its valid tax liens attaching to all the property of Sherman Ruth and Cape Ann is entitled to enforce the maritime liens of those corporations against the Marie and Winifred. Any assignment of these liens to Flood after the tax liens became effective and were duly recorded would give him no right to these lien claims superior to that of the United States under its tax liens.

 The claims of Sherman Ruth and Cape Ann are set forth in detail in the appendices to their respective libels. No records of any of the parties were produced to substantiate these claims but Burke, one of the owners of the Marie and Winifred and manager of both of these corporations, testified that the statements in the libels as to the services furnished were correct. (It appears, however, that the date 1953 which appears at the top of several pages of the Sherman Ruth statement is erroneous and should read 1952.) Flood testifies that both of these corporations had done much work for the Marie and Winifred, but could not testify as to any of the dates or specific items. He challenges the items for work done in 1953 on the ground that the vessel was not actually engaged in fishing. However, that does not preclude a finding that the work was done for the purpose of putting the vessel into condition to engage in fishing operations which the owners hoped could be resumed in the near future.

Flood has other claims based on assignments to him of alleged liens against the vessel held by John Chisholm Fisheries Co. and Jack Greenberg d/b/a Electro-Craft Company. As to the Chisholm claim, Flood testified that Chisholm made repairs to the Marie and Winifred sometime in 1951 or 1952. On March 22, 1952, Chisholm claimed a lien in the amount of $1,475.68 for repairs to the vessel which Flood says he paid, taking an assignment of the lien. There was no evidence to show exactly when these repairs were made. Since, as will appear later, the proceeds of the sale of the Marie and Winifred will be insufficient to pay claims of liens arising earlier than 1952, this claim must be rejected since there was no evidence to show that any of the repairs were made in 1952 rather than in 1951, and it will not be necessary to resolve the question of whether this lien was not in any case extinguished by an alleged payment by

Sherman Ruth to Rocky Neck Railways (another name under which Chisholm did business) on March 24, 1952, of $1,475.68, the exact amount of Chisholm's claim against the Marie and Winifred.

Flood's Electro-Craft claim is based on an assignment to him by that company of its lien claim against four vessels, one of which was the Marie and Winifred. As to the Marie and Winifred the claim is for rent at the rate of $35 per month for electronic equipment installed on board the vessel. Flood claims a lien in the amount of $696.65 which is the share attributable to the Marie and Winifred in a statement showing the total debt on the four vessels to be $2,034.66. This was reduced by various allowances and payments to $1300 as of March 17, 1953. Since there was no evidence to show that any of this reduction was to be specifically attributed to any particular vessel, it would seem that the most Flood could claim as due on the Marie and Winifred was $446.87, its proportional share of the unpaid balance of $1300. At the rate of $35 per month up to March 17, 1953, a valid lien for $89.21 arose during 1953 and the balance of $357.66 must be attributed to 1952.

■ In determining the priority of the various liens to a share in the fund of $4,409.85 now in the registry of the court, the rule is that the liens latest in date are to be paid first, with all liens of the same class arising during the same year being treated equally. Rubin Iron Works v. Johnson, 5 Cir., 100 F.2d 871; Norton v. The Evan N., D.C., 109 F. Supp. 505. On this basis payment must first be made of the 1953 liens—that of Cape Ann for $2,708.95 and $89.21 of the Electro-Craft claim. The 1952 liens consist of the remaining $357.66 of the Electro-Craft claim, the Sherman Ruth claim of $10,366.69 and the Cape Ann claim of $1,914.88. The $1,611.69 remaining in the fund after deduction of the 1953 liens is to be distributed proportionally among these three 1952 liens, giving $48.35 to Electro-Craft, $1,321.-

59 to Sherman Ruth and $241.75 to Cape Ann.

A decree will be entered awarding to intervenor Ernest J. Flood the amount of $137.56 representing the Electro-Craft liens of which he is assignee and to the United States the sum of $4,272.29 representing the Sherman Ruth and Cape Ann claims which it is entitled to enforce.