**In re William E. GRAN and
Shirley M. Gran.**

**William E. GRAN and Shirley
M. Gran, Appellants,**

v.

**INTERNAL REVENUE SERVICE,
UNITED STATES of America,
Appellee.**

Civ. No. LR–C–90–480.

United States District Court,
E.D. Arkansas, W.D.

May 20, 1991.
On Motion for Rehearing July 19, 1991.

Raymond A. Harrill, Little Rock, Ark.,
for appellants.

Michael N. Wilcove, U.S. Dept. of Justice, Washington, D.C., for appellee.

A. Leigh Tenney, North Little Rock,
Ark., Trustee.

ORDER

EISELE, District Judge.

This is an appeal from two orders of the
United States Bankruptcy Court. The
Court has jurisdiction to hear the appeal
pursuant to 28 U.S.C. § 158(a). For the
reasons given the judgments of the Bankruptcy Judge, the Honorable James G. Mixon, will be affirmed in all respects.

On November 27, 1989 the Bankruptcy
Court entered an order overruling appellants' objections to the proof of claim filed
by the Internal Revenue Service on behalf
of the United States, 108 B.R. 668. In a
separate order filed on April 23, 1990, the
Bankruptcy Court denied appellants' motion to alter or amend the prior judgment.
The issues on appeal are (1) whether the
lower court's finding that the debtor's federal income tax liability for 1982 and 1983
lacked "economic substance" was error on
the record before it; and (2) whether the
Bankruptcy Court's failure to classify certain portions of the debtor's federal income
tax liability for 1982 and 1983 as general,
unsecured, non-priority claims was wrong
as a matter of law. On review, a bankruptcy judge's findings of fact will not be set
aside unless clearly erroneous. The question whether a transaction is devoid of economic substance is a factual one. The
characterization of claim, however, is a legal matter pursuant to 11 U.S.C. § 507.
Legal conclusions are reviewed *de novo*.

In November and December of 1982
the Grans invested $18,540.00 in a cattle
embryo reproduction project on the advice
of Mr. Warren Massengill, who was also
the manager of the cattle operation for

Johnny Gardner Ranches. This investment was intended to be 10 per cent of their total investment, $185,400.00, the remainder to be paid in a single balloon payment before November 10, 1987. No further payments were ever made. A promissory note payable to Johnny Gardner Ranches in the amount of $185,400 was executed, as was a management contract and a bill of sale purporting to convey "the personal property described in the above mentioned management contract." The cattle reproduction involved fertilizing superior cow eggs with superior sperm and the implantation of the fertilized egg in an inferior cow for delivery at term, a complicated set of procedures requiring sterile environments, and technical equipment and expertise in healthy measure.

The Grans were familiar with Mr. Massengill since at least 1977, when he was designated a trustee in a living family trust to which the Grans transferred property and lifetime income "in an attempt to shift the incidence of taxation to the trust." *Gran v. Commissioner*, 664 F.2d 199, 200 (8th Cir.1981). Massengill had previously sold a family trust kit to Mr. Estle Gardner, Mr. Johnny Gardner's father and was, thereby, introduced to the younger Gardner. *Massengill v. Commissioner*, 876 F.2d 616, 617 (8th Cir.1989). The embryo project failed for a variety of reasons, including the firing of Massengill by Mr. Johnny Gardner.

The Grans claimed $18,200.00 in depreciation and expense deductions as well as an investment tax credit of $1,391.00 on their 1982 return stemming from their purchase of 65 head of cattle. They also claimed $39,160.00 for such deductions in 1983, and $38,130.00 for tax year 1985.[1] The IRS disallowed the Grans' deductions relating to the cattle investment and certain credits. Appellants filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on July 29, 1987. Appellee filed a proof of claim for 1982 and 1983 only. The amount claimed for 1982 taxes, penalties and interest was $48,-

961.31. The claim for 1983 totalled $20,-787.99.

A hearing was held by the Bankruptcy Judge on April 24, 1989 during which the court heard testimony from Mr. Ron Daily for the government and from Mr. Gran and an accountant, Mr. Ellis Wright, who prepared the 1982 return. The Bankruptcy Judge concluded that the transaction was a sham and need not be recognized for federal tax purposes. *See e.g. Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Killingsworth v. Commissioner*, 864 F.2d 1214, 1216 (5th Cir.1989). The court applied a seven part test for economically meaningless transactions approved by the Eighth Circuit in an appeal from a tax court judgment against Mr. Massengill involving the identical cattle scheme and similarly claimed deductions. *Massengill, supra* at 618 (citing *Grodt & McKay Realty, Inc. v. Commissioner*, 77 T.C. 1221, 1237–38 (1981)).

The court found, in part, as follows:

Although Gran testified that he became the owner of the cattle upon execution of the various documents, Gardner retained complete control and possession of the cattle pursuant to the management contract instead of retaining the customary security interest to secure payment of the purchase price. The cattle which Gran purportedly purchased was registered in the name of Johnny Gardner Ranches, rather than in Gran's name, and Gran never attempted to assert any ownership rights in the cattle. Gran did not participate in the embryo operation and has no knowledge of the present location of the cattle he supposedly owned. Although Gran has purportedly invested over $18,000 in cash, he has never taken any meaningful action to secure possession of this cattle or enforce the contract. In his bankruptcy petition, Gran did not list the cattle as an asset of his estate nor did he list Gardner as a creditor. Gran made no payments

1. The taxes due for 1985 were received in evidence below on the issue of the debtors' credibility.

to Gardner other than the down payment of $18,500.00 and Gardner never took any action against Gran to recover the unpaid purchase price. Gran has never seen the cattle he purchased and he agreed to invest $185,400.00 with Gardner without ever meeting him. Gran did not participate in the determination of the purchase price of the cattle, which was set by Gardner. Some of the cattle purportedly owned by Gran were listed on Gardner's records as being owned by other people.

Bankruptcy Court's Order of November 27, 1989, 108 B.R. 668, 672.

Appellants raise a number of objections to the findings below which relate to record keeping, Gran's failure to pursue his legal remedies, his failure to negotiate the contract, the credibility and accuracy of Mr. Daily's expert testimony relating to the value of the cattle in 1986, *inter alia*. This Court will not take up these points because it finds that the factual determinations contained in the order of November 27, 1989 are not clearly erroneous. To the contrary, the court meticulously examined the evidence before it and weighed the credibility of the witnesses and experts presented in reaching its conclusion. The judgment of November 27, 1989 will be affirmed.

█ The second issue on appeal concerns the Bankruptcy Court's failure to classify the following tax claims as general, unsecured and non-priority pursuant to 11 U.S.C. § 507: (a) the entire tax, interest and penalty for 1983; and (b) the penalty and interest on penalty portion of the 1983 claim.[2] Appellants moved to amend the judgment of November 27, 1989 and interposed its objections to a substituted claim for $111,779.83 filed by appellees.[3] In an order dated April 23, 1990 the Bankruptcy Court denied the motion, *inter alia*. The court did not rank the priority of the tax lien claims.

A federal lien for taxes "shall be a lien in favor of the United States upon *all* property and rights to property, whether real or personal, belonging to such person." Internal Revenue Code, 26 U.S.C. § 6321 (emphasis added). Such a lien is quite inclusive and even reaches property acquired after the assessment. *Glass City Bank v. U.S.*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *Shawnee State Bank v. U.S.*, 735 F.2d 308, 311 (8th Cir.1984).

Appellants make no mention of the federal tax liens, filed before July 27, 1989, the date of the petition, pursuant to 26 U.S.C. § 6323. Instead, appellant argues that "nothing in the record shows that there is any security to which a federal tax lien would attach." Appellant's Reply Brief at 9. Appellant mistakes the law. A federal tax lien arises at the point of assessment after a demand and failure to pay. The wide scope of the lien precludes the usual need to attach particular property. *In re May Reporting Services, Inc.*, 115 B.R. 652 (Bkrtcy.D.S.D.1990); *Shaw v. U.S.*, 331 F.2d 493, 497 (9th Cir.1964). Because the Court does not find an error of law in the Bankruptcy Court's judgment of April 23, 1990, it too will be affirmed.

IT IS THEREFORE ORDERED that the Judgments of the United States Bankruptcy Court be, and they are hereby AFFIRMED.

## ON MOTION FOR REHEARING

Pending before the Court is appellants' Motion for Rehearing. Appellee has responded and appellants have replied. The Court will deny the motion for reconsideration.

Appellants contend that this Court incorrectly framed the first issue on appeal as follows: "whether the lower court's finding that the [cattle transactions resulting in] debtor's federal income tax liability for 1982 and 1983 lacked 'economic substance' was error on the record before it." Op. at

---

**2.** Appellants also include in their brief an estimated claim by the I.R.S. of $708.00 and a penalty of $173.46 for 1986. The Bankruptcy Court did not, however, address the 1986 claim in either order and neither will this Court.

**3.** The larger figure represents disallowed deductions and credits for the tax years 1984 through 1986 as well as 1982 and 1983.

843 (May 20, 1991). Appellants contend that the Court should have focussed on the question "whether the IRS met its burden of proof to demonstrate that the debtors were indebted to the United States for each element of the claim filed by the government." Brief in Support of Motion for Rehearing at 2 (emphasis added): *see also* Brief for Appellants at 2.

This controversy centers around the Proof of Claim filed by the Internal Revenue Service and objected to by appellants. A proof of claim is prima facie evidence of the validity and amount of the claim. 11 U.S.C. § 502(a): Bankruptcy Rule 3001(f). Despite appellee's continuing contention to the contrary, "if [ ] evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to prove the validity of the claim by a preponderance of the evidence." Bankruptcy Order of November 27, 1989, 108 B.R. at 674 (quoting *California State Board of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co.)*, 837 F.2d 696, 698 (5th Cir.1988) internal punctuation omitted). This shifting of burdens occurs even if the party asserting the proof is the federal government. *Id.*

Appellants sole challenge to the proof of claim involved the disallowance of deductions claimed with respect to their investment in the embryo transfer program for tax years 1982 and 1983. They did not challenge the calculation of the tax, penalties, interest etc. Appellants now contend that "[n]othing was offered to the trial court to substantiate the [IRS's] claim." Brief in Support of Motion at 3. This is plainly not the case. Note the comments and conclusion of the court below:

> The debtors produced evidence concerning the preparation of their 1982 and 1983 personal income tax returns and the basis for the claimed deductions, and then rested. The IRS went forward and introduced evidence which rebutted the correctness of the deductions claimed by

the debtors. Notwithstanding the argument by the IRS that the debtors had the burden of proof, the IRS established by *convincing evidence* that its claim was proper and that the debtors' objection was not credible and was without merit.

Bankruptcy Order of November 27, 1989, 108 B.R. at 674.

When an objection shifts the burden, a claimant must prove its claim by a preponderance of the evidence. *In re Aulicino*, 48 B.R. 252 (Bkrtcy.Conn.1985). But it is debtors' task to challenge the claim on every ground available to them. When debtors do not put forward evidence that the proof of claim deviates from substantial conformity to official form the IRS need not address itself to that issue in its surrebuttal. Debtors may not interpose a single ground for objection and contend later that the IRS has not met its burden as to form or content.[1] The IRS must, however, carry the ultimate burden of persuasion on the claim as a whole. This it did.

In its Order of May 20, 131 B.R. 843, affirming the decision below, this Court found that the Bankruptcy Judge "meticulously examined the evidence before it and weighed the credibility of the witnesses and experts presented in reaching its conclusion" that the cattle transaction was an economic sham. The critical issue before the bankruptcy court was whether the proof of claim filed by the IRS was valid. It held, on the basis of its finding, that the cattle transaction had no economic merit.

The Court's focus on the validity of the critical transactions subsumed the question of whether the government met its burden of persuasion. And the Court notes that while the applicable standard is proof of validity by a preponderance of the evidence, the bankruptcy judge's finding indicated that the IRS had met its burden by "convincing" evidence.

The motion for rehearing will be denied.

---

1. The Court declines to adopt appellee's view that an assessment or deficiency is entitled to a presumption of correctness as to each item. We deal here with proofs of claim and not with tax deficiencies. Proofs of claim are governed exclusively by the Bankruptcy Code and Rules. *In re Hudson Oil Co., Inc.*, 91 B.R. 932 (Bkrtcy. D.Kan.1987).

IT IS THEREFORE ORDERED that Appellants' Motion for Rehearing be, and it is hereby, DENIED.