### In re Albert P. NOWICKI, Debtor.

### Ray O. RODRIGUEZ, as Trustee of the estate of Albert P. Nowicki, Plaintiff,

v.

### CITIBANK, F.S.B., First National Bank of Blue Island, Shirley Nowicki, Old Kent Bank, Southwest Bank and Trust Company of Orland Park, the United States of America, the State of Illinois Department of Revenue and the State of Illinois Director of Illinois Department of Employment Security, Defendants.

Bankruptcy No. 95 B 21829.
Adversary No. 96 A 00291.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 26, 1996.

---

Stacy K. Strong, Rodriguez & Villalobos, Chicago, IL, for Plaintiff.

Ann Bratton, VP & Senior Counsel, Citibank, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This proceeding is before the Court to determine the validity, priority, and extent of liens and interests in the proceeds of the sale of the residence of Albert P. Nowicki (the "DEBTOR") and his spouse, Shirley Nowicki ("Shirley"). After considering the submissions of all parties and the Statement of Admitted or Uncontested Facts, the Court finds that the estate and Shirley are each entitled to one half the proceeds, after deducting closing costs. The Trustee's fees and expenses shall be deducted from the proceeds in which the estate has an interest before distribution to the secured parties. The Court likewise finds that the Internal Revenue Service (the "IRS"), the Illinois Department of Employment Security ("IDES") and the First National Bank of Blue Island ("FNBBI") have valid, perfected liens in the proceeds. Citibank, F.S.B. ("Citibank") and Old Kent Bank do not. The Court need not reach the issue of whether the Illinois Department of Revenue ("IDOR") has a valid lien in the proceeds because even if IDOR held a valid perfected lien in the proceeds, it would hold a fourth priority lien and there are insufficient proceeds to pay IDOR's claim. The relative priorities of the valid, perfected liens are set forth below.

## BACKGROUND

The following facts are not in dispute and have been extracted from the parties' joint Statement of Admitted or Uncontested Facts, unless otherwise stated:

Prior to October 31, 1994, the DEBTOR and Shirley owned a parcel of real estate located at 2261 West 107th Place, Chicago, Illinois 60643 (the "Property") as joint tenants.[1] On October 31, 1994, the Property

---

1. The parties included among the exhibits in the Statement of Admitted or Uncontested Facts a Certificate of Title for the Property, indicating that the Property had been registered under the Illinois Torrens Act. The Illinois Torrens Act provided a title registration scheme for land in the state of Illinois. See 735 ILCS 35/0.01 et seq. The Torrens Act was repealed pursuant to Public

was transferred for no consideration into a land trust with the Standard Bank and Trust Company (the "Land Trust"). Shirley was listed as the beneficiary. In December 1994, Shirley placed the Property on the market for sale and on September 9, 1995, she entered into a real estate sales contract to sell the Property for $195,000.00. The closing date was set for October 31, 1995.

On October 16, 1995, the DEBTOR filed a voluntary petition for Chapter 7 relief. In his schedules, the DEBTOR listed the Property, and noted that it was subject to reconveyance to the bankruptcy estate and Shirley as joint tenants. On October 25, 1995, Ray O. Rodriguez, the duly appointed Trustee of the DEBTOR's bankruptcy estate, filed an emergency motion seeking to avoid the transfer of the DEBTOR's interest in the Property pursuant to 11 U.S.C. § 548(a)(2) and the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 et seq., and for authority to sell the Property free and clear of liens and other interests pursuant to 11 U.S.C. § 363.

The Court denied this motion for lack of adequate notice and for failure to file an adversary. The Trustee subsequently renoticed this motion. On December 12, 1995, counsel for Shirley and the lien claimants appeared. At that hearing, all parties indicated that the sale should proceed in the best interests of the estate, waived the filing of an adversary, and submitted an agreed order that granted the Trustee's second motion. The Court's order set forth that the proceeds of the sale shall stand in lieu of the Property subject to an adversary to be filed at a later date by the Trustee. The order was entered without prejudice to any party with a potential interest in the proceeds to assert any claim and defend that interest.

On December 18, 1995, the closing was held and the Property was sold for $195,000.00. The deductions from the sale price totaled $27,471.94 and included closing costs, the payoff of a first mortgage on the Property, outstanding water bills and county taxes. Additionally, Rodriguez & Villabos, the attorneys for the Trustee, charged $650 in attorneys' fees for the closing. The Trustee subsequently filed this complaint to determine the validity, priority, and extent of all liens and other interests in the Property.[2]

The potential interests in the proceeds are as follows:

Shirley, as a joint tenant in the Property, asserts that she is entitled to half the net proceeds of sale, or $83,439.03.

The Trustee asserts that he is entitled to be paid $12,113.01 from the estate's portion of the proceeds, prior to any disbursement to secured parties, pursuant to 11 U.S.C. § 506(c). This figure represents $829.01 in costs plus $11,284.00 in attorneys' fees for time spent pursuing the motion to avoid the transfer of the Property and obtaining authority to sell the Property. No party has objected to the reasonableness of these figures.

FNBBI is a judgment creditor of the DEBTOR. FNBBI recorded a memorandum of judgment against the DEBTOR on April 26, 1995 in the amount of $40,322.00 plus costs, and on May 10, 1995 served a citation to discover assets upon both the DEBTOR and the trustee of the Land Trust.

On June 28, 1995, Old Kent Bank, another judgment creditor of the DEBTOR, recorded a memorandum of judgment against the DEBTOR and the Property in the amount of

Act 86–1481, also known as the Torrens Repeal Law, approved January 14, 1991 and effective January 1, 1992.

Pursuant to the Torrens Repeal Law, the first voluntary conveyance after the repeal of the law automatically takes the property out of the Torrens system. See 735 ILCS 40/5. Although the parties have not addressed the issue of whether the Property has been transferred out of the Torrens systems, the Court will assume that the initial conveyance into the Land Trust was the first voluntary conveyance pursuant to the Torrens Repeal Law and that none of the liens were required to be registered under the Torrens system.

2. The Trustee originally asserted in his complaint that Southwest Bank and Trust Company of Orland Park ("Southwest") may have an interest in the proceeds of sale. Southwest subsequently notified the Trustee that it had received payment from a third party in satisfaction of its judgment claim against the DEBTOR. Thus, Southwest was dismissed as a defendant on July 10, 1996 pursuant to court order.

$33,603.54 with the Recorder of Deeds of Cook County ("Cook County Recorder"). Old Kent Bank never served a citation to discover assets on the trustee of the Land Trust or the DEBTOR.

On August 29, 1995, Citibank recorded, with the Cook County Recorder, an order approving the Sheriff's report of sale and distribution for a parcel of property located at 6206 South Honore, Chicago, Illinois. This order indicates that Citibank holds a judgment against the DEBTOR and the Land Trust for $507.19. Citibank did not serve citation to discover assets upon the Trustee or the DEBTOR.

Additionally, various taxing authorities assert liens against the property. The United States Internal Revenue Service ("IRS") asserts that it holds a tax lien in the amount of $59,700.40 against the DEBTOR. The IRS recorded this lien against the DEBTOR on January 24, 1995. That figure represents the following taxes due from and assessed against the DEBTOR as follows:

| Taxes Owed | Due and Payable On | Assessed On | Amount |
|---|---|---|---|
| 941 Taxes | March 31, 1993 | February 14, 1994 | $ 3,037.25 |
| 941 Taxes | June 30, 1993 | February 14, 1994 | $ 3,929.30 |
| 940 Taxes | December 31, 1993 | February 28, 1994 | $ 719.54 |
| 941 Taxes | December 31, 1993 | March 21, 1994 | $20,164.26 |
| 941 Taxes | March 31, 1994 | June 27, 1994 | $31,850.05 |
| | | | $59,700.40 |

IDOR asserts that it has a lien against the DEBTOR and Albert P. Nowicki & Company Real Estate (the "DEBTOR's Business") in the amount of $7,916.49. IDOR recorded this lien, which represents unpaid withholding taxes for the first, second, and third quarters of 1994, on July 12, 1995. IDOR has submitted no evidence of any assessments made.[3]

The Department of Employment Security of the state of Illinois ("IDES") asserts two liens against both the DEBTOR and the DEBTOR's Business. On August 4, 1994, IDES recorded one lien for outstanding unemployment contributions for the first and second quarter of 1993 totaling $1,386.38. On April 18, 1995, IDES recorded a second lien for unpaid unemployment contributions for the third and fourth quarter of 1993 totaling $7,206.89. Pursuant to the lien notices recorded with the Cook County Recorder, the liens became due and payable as follows: [4]

| Quarter Covered | Due and Payable On | Amount Due |
|---|---|---|
| First Quarter 1993 | April 30, 1993 | $ 436.95 |
| Second Quarter 1993 | July 31, 1993 | $ 579.14 |
| Third Quarter 1993 | Date not listed | $ 733.37 |
| Fourth Quarter 1993 | Date not listed | $4,828.52 |

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding under 28 U.S.C. § 1334(b). Because this proceeding is one to determine the validity, extent, and priority of liens, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), & (O).

---

3. IDOR has asserted that it assessed the first quarter 1994 taxes on April 23, 1994. IDOR did not present any evidence supporting this assertion and did not present any evidence that indicated what, if any, portion of the total amount due was assessed on that date.

4. It is unclear from the facts presented why the IDES figures set out quarterly do not match the amount of the liens filed. Likewise there was no assessment information presented to the Court for the third and fourth quarter of 1993, although IDES asserts that the liens became due and payable when the DEBTOR filed quarterly returns reflecting these amounts due.

## DISCUSSION AND ANALYSIS

### I. Shirley Nowicki's interest in the proceeds

■ Prior to the conveyance into the Land Trust, Shirley was a joint tenant as to the Property. No claims have been made against her interests by the estate or by any creditor.

Under the Agreed Order, when the conveyance to the Land Trust was avoided, Shirley regained her one half interest in the Property as joint tenant. Section 363(j) of the Bankruptcy Code provides, in pertinent part, that after the sale of property in which the estate and another have interests as joint tenants, the trustee must distribute the proceeds of sale, "less the costs and expenses, not including any compensation of the trustee, of such sale" according to the interests of the parties. Therefore, both Shirley and the estate are entitled to one half the proceeds, calculated after deducting $28,121.94. This figure represents costs in the amount of $27,471.94 and attorneys' fees in the amount of $650 all arising from the sale of the Property.[5] No part of the $12,113.01 claimed by the Trustee is chargeable to Shirley's portion of the proceeds.

### II. The Trustee's costs and expenses

■ The Trustee is entitled to $12,113.01 from the estate's portion of the proceeds of sale pursuant to 11 U.S.C. § 506(c) as reasonable and necessary costs and expenses of preserving and disposing of the Property for the benefit of the secured creditors.

11 U.S.C. § 506(c) provides that:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

To recover under section 506(c), therefore, the Trustee must prove that the expenses (1) were necessary, (2) benefited the secured creditors, and (3) were reasonable. *In re*

Trim–X, Inc., 695 F.2d 296, 299 (7th Cir. 1982); In re Lunan Family Restaurants Ltd. Partnership, 192 B.R. 173, 178 (Bankr. N.D.Ill.1996).

■ The expenses in avoiding the fraudulent transfer of the Property were necessary to bring the asset back into the bankruptcy estate and enable the Trustee to complete the sale of the Property. Likewise, all expenses incurred in closing are likewise recoverable as necessary to complete the contract and avoid a potential specific performance suit by the buyers. This benefitted the secured creditors, because the prompt sale enabled the Trustee to get the original sales price for the property. The amount of the expenses and costs have not been contested by any party. The Trustee is therefore entitled to be paid $12,113.01 from that portion of the proceeds of sale brought into the estate, prior to any disbursement to any creditors.

### III. Fraudulent Transfers

It is undisputed that, at the time the judgment liens were recorded with the Cook County Recorder against the DEBTOR and the Property, and when FNBBI served the citation to discover assets upon both the DEBTOR and the trustee of the Land Trust, the record title was in the name of the Land Trust of which Shirley was the beneficiary. The lienors, therefore, base their claims on a finding that the transfer into the Land Trust was a fraudulent transfer.

■ Both section 548 of the Bankruptcy Code and the UFTA, define a fraudulent transfer as, *inter alia*, a voluntary transfer made, or obligation incurred with the actual intent to hinder, delay, or defraud a creditor, whether the creditor's claim arose before or after the transfer or obligation. 11 U.S.C. § 548(a)(1); 740 ILCS 160/5(a)(1).

■ The transfer of the Property into the Land Trust was a fraudulent transfer. Among the documents attached to the State-

---

5. FNBBI's argument that because the conveyance is fraudulent, Shirley owes 100% of the closing costs is without merit. Had there been no conveyance to the Land Trust, the DEBTOR would have had a one half interest in the proceeds, which would have been calculated *after* closing costs. Regardless of whether the conveyance had been fraudulent, the estate cannot recover more than what the DEBTOR originally had.

ment of Admitted or Uncontested Facts was a stipulation submitted to an Illinois State Court in a prior action against the DEBTOR. In that stipulation, the DEBTOR admitted that he transferred the Property to the Land Trust for no consideration and with an intent to "protect his interest from creditors." *See* Statement of Admitted or Uncontested Facts, Exhibit 22. The Trustee has alleged that this transfer was fraudulent and an agreed order avoiding the transfer has been entered based on that allegation. This is sufficient to find a fraudulent transfer both under the Bankruptcy Code and under the UFTA. *See* 11 U.S.C. § 548(a)(1); 740 ILCS 160/5.

### A. The Uniform Fraudulent Transfer Act

In 1989 the Illinois legislature adopted the UFTA. The statute that preceded the UFTA provided that fraudulent conveyances in Illinois were "void." 59 Ill.Rev.Stat. § 4 (repealed by Public Act 86–814, effective January 1, 1990).[6] In spite of the clear language in the statute, the cases decided under this statutory scheme did not treat such transfers as completely "void," but rather held that despite the fact that such a conveyance was void as against creditors, it was still valid as between the transferor and the transferee. Those cases further held that any liens arising solely through the transferor and recorded against the Property subsequent to the fraudulent transfer were ineffectual. These courts reasoned that the transferor no longer held an interest to which a security interest could attach. *See De Martini v. De Martini,* 385 Ill. 128, 133, 52 N.E.2d 138, 140 (1943); *see also Grochocinski v. Kennedy (In re Miller),* 148 B.R. 510, 518 (Bankr.N.D.Ill. 1992) (Schwartz, C.J.) (applying *De Martini* to a case that arose under the UFTA).

Thus, even under the old act, the transfers were treated as voidable rather than void.

■ Although no single provision of the UFTA states whether a fraudulent transfer is void or voidable, a careful reading of the Act indicates that a fraudulent transfer is only voidable, and then only to the extent necessary to satisfy the claims of creditors. The UFTA never uses the expression "void." 740 ILCS 160/5 defines fraudulent transfers as, *inter alia,* transfers made or obligations incurred "with actual intent to hinder, delay, or defraud any creditor of the debtor." The UFTA also provides, in 740 ILCS 160/8(a)(1), that a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Then 740 ILCS 160/9(b) provides creditors with a remedy to the extent such fraudulent transfers are voidable. Reading these three provisions in tandem, it is clear that in Illinois, a fraudulent transfer may, at the instance of creditors, be deemed voidable, but only to the extent necessary to satisfy the claims of creditors.

■ What this means for the creditors in this case is that from the time the property was conveyed into the land trust it was no longer property of the DEBTOR. Recording liens against the Property after the DEBTOR fraudulently conveyed the Property to the Land Trust is ineffectual to create a valid lien at that time because the DEBTOR no longer had any real property interest to which their liens could attach.

### B. Judgment Liens, Fraudulent Conveyances, and Illinois Land Trusts

The Illinois legislature has provided a procedure through which creditors may perfect liens in property that has been fraudulently conveyed. The UFTA, 740 ILCS 160/8(a) provides, in pertinent part, that in an action

---

6. Under the old act in Illinois, "[e]very gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb or delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, or judgment entered, with like intent, *shall be void* as against such creditors, purchasers and other persons." 59 Ill.Rev.Stat. § 4 (re-

pealed by Public Act 86–814) (emphasis added). It should be noted that Illinois has enacted the Uniform Fraudulent Transfer Act of 1984 and not the Uniform Fraudulent Conveyance Act of 1918, which still remains in effect in Delaware, Maryland, Massachusetts, Michigan, New York, Tennessee, the Virgin Islands, and Wyoming. To date, 33 states, including Illinois, have enacted the Uniform Fraudulent Transfer Act.

"for relief against a transfer or obligation under this Act, a creditor ... may obtain ... (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure."

In Illinois, a beneficial interest in a land trust is considered intangible personal property. *Burditt & Radzius, Chartered v. Brown (In re Barone)*, 184 B.R. 747, 749 (N.D.Ill.1995); *In re Fowler*, 90 B.R. 375, 377 (Bankr.N.D.Ill.1988); *In re Marriage of Mostow*, 126 Ill.App.3d 67, 81 Ill.Dec. 490, 492, 466 N.E.2d 1292, 1294 (1st Dist.1984). The proper method under the Illinois Code of Civil Procedure to perfect a lien in intangible personal property is via a citation to discover assets, under 735 ILCS 5/2–1402.

Section 1402 allows a creditor to perfect its lien in property of a judgment debtor against which the creditor may seek satisfaction of its judgment by serving a citation to discover assets on the debtor and, if applicable, on the third party holding such assets. 735 ILCS 5/2–1402(m). Prior to July 6, 1994, there was a divergence of authority in Illinois as to whether service of a citation to discover assets itself creates and perfects a judgment lien on intangible, personal property in Illinois. *See Miller*, 148 B.R. at 520–522 (discussing three different views on how a judgment creditor obtains a lien on intangible personal property and when that lien attaches). The statute governing service of a citation to discover assets was amended, effective July 6, 1994. Pursuant to the amendment, a properly served citation to discover assets creates a lien on personal property as of the date served. 735 ILCS 5/2–1402(m).

The proper procedure for serving a citation to discover assets "shall be prescribed by the rules." 735 ILCS 5/2–1402(a). The rules provide that if the assets are held by a third party, the citation to discover assets must be properly served on both the party holding the assets and on the judgment debtor. Il.Sup.Ct.R. 277(a). The judgment creditor may serve such a citation on any third party whom the judgment creditor believes holds property of the judgment debtor. *Bentley v. Glenn Shipley Enters., Inc.*, 248 Ill.App.3d 647, 651, 189 Ill.Dec. 115, 118, 619 N.E.2d 816, 819 (4th Dist.1993). When the debtor has an interest in a land trust, a citation to discover assets validly served on both the trustee of the land trust and the judgment debtor creates a lien in any interest held by the judgment debtor in that land trust. *Burditt & Radzius, Chartered v. Brown (In re Barone)*, 184 B.R. 747, 749 (N.D.Ill.1995); *In re Fowler*, 90 B.R. 375, 377 (Bankr.N.D.Ill.1988); *In re Marriage of Mostow*, 126 Ill.App.3d 67, 81 Ill.Dec. 490, 492, 466 N.E.2d 1292, 1294 (1st Dist.1984).

Thus, under 740 ILCS 160/8, the judgment creditor may follow the citation procedure set out in 735 ILCS 5/2–1402 to perfect a lien in intangible, personal property, i.e. the beneficial interest in a land trust, even thought the debtor could not do so.[7]

## IV. Judgment Creditors

### A. FNBBI

FNBBI, therefore, holds a valid, perfected lien in the estate's interest in the proceeds. On May 10, 1995, FNBBI, as a judgment creditor of the DEBTOR, served a citation to discover assets on the trustee of the Land Trust and the DEBTOR. This right to recover the fraudulent transfer in intangible personal property is the procedure used to obtain and perfect a lien pursuant to the UFTA and the Illinois Code of Civil Procedure. *See* 740 ILCS 160/8(a)(2). Service of the citation on the trustee of the Land Trust and the DEBTOR effectuated a valid lien on that property. *See* 735 ILCS 5/2–1402(m); Il.Sup.Ct.R. 277(a). FNBBI, therefore, has a validly perfected lien in the amount of $40,322 against the proceeds brought into the estate from the sale of the Property.

---

7. This Court need not address the questions considered by *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir.1987) and *Grochocinski v. Kennedy (In re Miller)*, 148 B.R. 510 (Bankr.N.D.Ill.1992), which struggled with the nature of the interest of a debtor's estate under 11 U.S.C. § 541.

## B. Old Kent Bank

■ Old Kent Bank's lien against the DEBTOR fails because Old Kent Bank did not perfect its judgment lien. Old Kent Bank recorded its memorandum of judgment against the DEBTOR and the Property with the Cook County Recorder on June 28, 1995. However at the time the judgment was recorded against the DEBTOR, the DEBTOR had no interest in real property to which a lien could attach, having conveyed his interest into the Land Trust on October 3, 1994. *See De Martini*, 385 Ill. at 133, 52 N.E.2d 138; *see also Miller*, 148 B.R. at 518. Thus, Old Kent Bank's lien fails and Old Kent Bank holds a general unsecured claim against the estate in the amount of $33,-603.54.

## C. Citibank

Citibank likewise did not properly perfect its lien in the DEBTOR's real or personal property and, therefore, it's lien also fails. Citibank's judgment was recorded against the DEBTOR and the Land Trust with the Cook County Recorder on August 29, 1995, but at that time the DEBTOR had no interest in real property. *See De Martini*, 385 Ill. at 133, 52 N.E.2d 138; *see also Miller*, 148 B.R. at 518. Likewise, although the judgment specifically noted the Land Trust as the property against which the judgment was recorded, recording by itself is insufficient. As already noted above, real property held in an Illinois land trust is considered intangible personal property and the appropriate provisional remedy to secure a lien in such property is service of a citation to discover assets on the land trustee and the DEBTOR. *See Barone*, 184 B.R. at 749; *Fowler*, 90 B.R. at 377. Citibank failed to serve a citation to discover assets on either the trustee of the Land Trust or on the DEBTOR. As such, Citibank holds a general unsecured claim against the estate in the amount of $507.19.

## V. The Taxing Authorities

Several taxing authorities also hold valid liens against the proceeds pursuant to either federal or state statutes as follows:

## A. The IRS

■ The IRS holds a valid lien in all the DEBTOR's personal and real property, including a lien in the proceeds of the sale of the Property, in the amount of $59,700.40. 26 U.S.C. § 6321 establishes that:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Such a lien arises as of the date of assessment. 26 U.S.C. § 6322; *see also United States v. W.F. Monroe Cigar, Co. (In re W.F. Monroe Cigar, Co.)*, 166 B.R. 110, 112 (N.D.Ill.1994). Any such lien for unpaid federal income taxes becomes a lien on any current or after acquired property and continues until the liability is satisfied or becomes unenforceable by reason of a lapse in time. *United States v. Sanabria*, 424 F.2d 1121, 1122 (7th Cir.1970) (citing *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945)).

■ Outstanding taxes the DEBTOR owed the IRS were assessed against the DEBTOR as set forth in the Background section above. Each assessment occurred prior to the fraudulent transfer and, as such, each assessment gave rise to liens against all personal and real property of the DEBTOR, including the Property at issue. The IRS, therefore, has a valid lien in the amount of $59,700.40 on the proceeds at issue.

## B. The State of Illinois
### (i) Withholding Taxes Claim (IDOR)

■ Pursuant to 35 ILCS 5/1101, a lien arises in favor of the State of Illinois on all "property and rights to property, whether real or personal," belonging to any party that fails to pay state income taxes. 35 ILCS 5/1101(a). This lien arises as of the date the taxes are assessed and continues until the liability is satisfied or extinguished by the state's failure to file a notice of lien within three years. 35 ILCS 5/1101(b) & (d).

### (ii) Unemployment Taxes Claim (IDES)

Unemployment insurance contributions become due and payable quarterly on or before the last day of the month next following the calendar quarter for which the contributions have accrued. 820 ILCS 405/1400. On the date the contributions become due and payable, a lien for the amount due and interest and penalties thereon arises upon "all real and personal property and rights thereto owned or thereafter acquired" 820 ILCS 405/2400.

Thus, under Illinois law the statutory scheme treats withholding taxes differently than it does taxes for unemployment insurance. The lien for unpaid withholding taxes arises only upon assessment. The lien for unpaid unemployment contributions is created upon the date those taxes are due and payable.

In this case IDOR provided no evidence of the dates on which the withholding taxes were assessed, although it is undisputed that IDOR recorded its lien on July 12, 1995. On that date the Debtor, having previously transferred its property into the land trust, had no interest in the Property to which the lien could attach.

It may be argued that the IDOR lien attached to the property, as after-acquired property, when the order of December 12, 1995 was entered voiding the fraudulent transfer. The Supreme Court has held that an IRS lien attaches to after-acquired property. *Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945) ("a continuing [IRS] lien covers property or rights to property in the delinquent's hands at any time prior to expiration."); *see also United States v. McDermott*, 507 U.S. 447, 453, 113 S.Ct. 1526, 1530, 123 L.Ed.2d 128 (1993). Furthermore, in *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), the Supreme Court interpreted a statute creating a general state tax lien the same as the IRS statute that was worded "almost identically." In this case, the federal tax lien statute and the IDOR tax lien statute are almost identical. *See* 26 U.S.C. §§ 6321 & 6322; 35 ILCS 5/1101. Interpreting the IDOR tax lien statute consistently with the Supreme Court's interpretation of the IRS tax lien statute, the IDOR tax lien would attach to after-acquired property. It could, however, also be argued that the lien rights of IDOR do not attach to after-acquired property. The section dealing with the unemployment tax lien, Section 820 ILCS 405/2400 clearly spells out that the lien attaches to "... rights ... thereafter acquired ..." while the withholding tax lien section is silent. The implication would therefore be that only unemployment tax liens attach to after-acquired property.

This Court need not reach that issue in this case since the clearly prior liens, held by the IRS and FNBBI exhaust all the proceeds.

IDES has two valid liens, one in the amount of $1,386.38 and another in the amount of $7,206.89. Pursuant to 820 ILCS 405/1400 & 2400, and as reflected in the two Notices of Liens recorded with the Cook County Recorder on August 4, 1994 and April 18, 1995, the unemployment contributions became due and payable on April 30, 1993, July 31, 1993, October 31, 1993, and January 31, 1994. On those dates, liens attached to all personal and real property of the DEBTOR. At that time, the DEBTOR was a joint tenant in the Property at issue and the Property had not yet been fraudulently conveyed. IDES, therefore, has perfected liens for a total amount of $8,593.27.

## VI. Priorities

Pursuant to the above analysis, the following parties have valid liens against the $195,000 in proceeds realized from the sale of the Property:

| Claimant | Claim Source | Claim Amount |
|---|---|---|
| Shirley Nowicki | Joint Tenancy | $ 83,439.06 |
| Trustee | 11 U.S.C. § 506(c) | $ 12,113.01 |
| IDES | State Tax Lien | $ 1,386.38 |
| IDES | State Tax Lien | $ 7,206.89 |
| IRS | Federal Tax Lien | $ 59,700.40 |
| FNBBI | Judgment Lien | $ 40,322.00 |
| | | $204,167.74 |

The priority of these claims are as follows:

### A. Shirley

As a joint tenant in the Property, Shirley receives her one half of the net proceeds, after deducting closing costs. Shirley's in-

terest is not property of the estate. Furthermore, none of the creditors have liens against Shirley and, as such, she receives her distributions free and clear of all liens against the DEBTOR. *See* 11 U.S.C. § 363(j).

The other half of the proceeds are distributed from the estate as follows:

### B. The Trustee

 Of the funds brought into the estate, the Trustee receives his fees and costs prior to any distribution to the secured creditors. *See* 11 U.S.C. 506(c); 11 U.S.C. § 363(j).

### C. Statutory Priorities of Judgment Creditors and Tax Lienors

 Several United States Supreme Court decisions have carved out a priority scheme for competing state and federal tax liens, both as against each other and as against judgment creditors. As against a lien created by state law, the priority of the federal tax lien depends upon when the liens in question became choate. The Supreme Court has determined that a lien becomes choate once it satisfies a three part test. *United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 1527–28, 123 L.Ed.2d 128 (1993); *United States v. Vermont*, 377 U.S. 351, 354, 84 S.Ct. 1267, 1269, 12 L.Ed.2d 370 (1964); *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369–70, 98 L.Ed. 520 (1954). A lien becomes choate when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *McDermott*, 507 U.S. at 449, 113 S.Ct. at 1527–28; *Vermont*, 377 U.S. at 354, 84 S.Ct. at 1269; *New Britain*, 347 U.S. at 84, 74 S.Ct. at 369–70. The priority rule between choate liens is first in time, first in right. *McDermott*, 507 U.S. at 449, 113 S.Ct.

at 1527–28; *New Britain*, 347 U.S. at 85, 74 S.Ct. at 370.

The date a tax lien becomes choate depends on the particular statute that creates the lien itself. When the statutory scheme sets forth a point in time when the lien will arise against or attach to specific property of the debtor, and the three-prong test is met, that lien will be sufficiently choate to compete for priority. Thus, in *New Britain*, city tax liens became choate on the date they arose or were assessed, pursuant to the statutory schemes that created the liens. Likewise, in *Vermont* the Court found that the liens in question became choate on the dates the taxes were assessed, because on that date the identity of the lienor, the property subject to the lien, and the amount of the lien were established. 377 U.S. at 358, 84 S.Ct. at 1271.[8]

 The rule that tax liens become choate and thus have priority from the date of assessment has certain statutory exceptions. Under the Internal Revenue Code, IRS liens take priority over a validly perfected judgment lien only if the IRS lien was recorded prior to the point in time when the holder of the competing lien recorded its notice of its lien. 26 U.S.C. § 6323(a); *see also United States v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). This same exception applies under the Illinois statutory scheme creating both IDOR and IDES liens. *See* 35 ILCS 5/1103(a) (lien in favor of IDOR has priority over a "bona fide purchaser, holder of a security interest, mechanics lienor, mortgagee, or judgment lien creditor" as of date IDOR files notice of lien); 820 ILCS 405/2402 (IDES lien is inferior to liens duly recorded prior to filing of notice of lien by IDES).

The perfection chronology in the current case is, therefore, as follows:

---

**8.** Any super-priority established by state statute, however, is not applicable as against federal tax liens. For example, in *New Britain*, the city of New Britain, Connecticut held two liens against the proceeds from a foreclosure of two mortgages. Other interests in addition to the mortgages and the municipal liens included a federal tax lien and a judgment lien. Pursuant to the state statutory scheme, the city liens took precedence over the interest of the parties holding the mort-

gages, although the mortgages arose prior to both the federal and city tax liens. Stating that "[t]he United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors," the Court held that the federal tax liens, which became choate prior to the state tax liens, had priority over the state liens. *Id.* at 88, 74 S.Ct. at 371–72.

**(1) Priority Determined
by Recording Date:**

FNBBI's judgment lien became choate on May 10, 1995, the date it served the trustee of the Land Trust and the DEBTOR with a citation to discover assets. On that date, the identity of the lienor, the property subject to the lien, and the amount of the lien were established. FNBBI will have priority over any tax lien not recorded when FNBBI's lien became choate.

IDES recorded its liens against the DEBTOR on August 4, 1994 and April 18, 1995; the IRS recorded on January 24, 1995. If the IDOR lien applies to after-acquired property, the IDOR lien would have become choate on December 12, 1995, the date the fraudulent transaction was avoided and the Property brought into the estate pursuant to this Court's Order although it was recorded on July 12, 1995. The relevant dates for priority as against FNBBI, therefore, are as follows: [9]

| Holder | Date Recorded/Perfected | Amount of Lien |
|---|---|---|
| IDES | August 4, 1994 | $ 1,386.38 |
| IRS | January 24, 1995 | $59,700.40 |
| IDES | April 18, 1995 | $ 7,206.89 |
| FNBBI | May 10, 1995 | $40,322.00 |
| IDOR | December 12, 1995 | $ 7,916.49 |

Pursuant to the rule of law that first in time is first in right, IDES has a first priority lien, the IRS holds the second priority lien, IDES holds another, third priority lien, FNBBI holds a fourth priority lien, and IDOR, if it holds a lien at all, has a fifth priority lien in the proceeds.

**(2) Priority Between Taxing Bodies:**

As between the taxing authorities, however, the priority date is the date the lien arose or was assessed, pursuant to the specific statute that gave rise to the lien. The result, by assessment date, however, is the same, with the exception that both IDES liens have priority over the IRS liens. Pursuant to the Internal Revenue Code, the IRS lien became choate on the date the taxes were assessed against the DEBTOR. *See* 26 U.S.C. § 6322 (IRS liens arise as of date of assessment). Pursuant to the state statute creating the IDES lien and the Notices of Liens attached to the Statement of Admitted or Uncontested Facts, the IDES liens became choate on April 30, 1993, July 31, 1993, October 31, 1993, and January 31, 1994. On these dates, the amount of the lien, the identity of the lienor, and the identity of the property subject to the lien were established. *See McDermott*, 507 U.S. at 449, 113 S.Ct. at 1527–28; *see also* 820 ILCS 405/1400 & 2400. IDOR has failed to provide any evidence of the dates on which these taxes were assessed. *See* 35 ILCS 5/1101(b) & (d) (IDOR liens arise as of date of assessment). As such, IDOR's lien, which was recorded after the fraudulent conveyance, only became choate, if at all, on December 12, 1995, the date on which the transfer was avoided by order of this Court.[10] *See McDermott*, 507 U.S. at 453, 113 S.Ct. at 1530.

In this case, all IDES contributions became due and payable prior to the date the taxes due to the IRS were assessed, and absent evidence of assessment dates, IDOR's lien became choate, if at all, only after both the IDES and IRS liens became choate. Therefore, the IDES liens have priority over the IRS liens and any lien IDOR may hold in the property and the IRS liens have priority over IDOR. The priority of the tax liens,

9. It should be noted that although the IRS lien and the second IDES lien were recorded at a time when the DEBTOR had no interest in the Property, the liens had already attached to the Property when they were assessed. Thus, recording against the Property for the purposes of notice to third parties was still valid for purposes of priority as against third parties. Furthermore, the IDOR lien is included in the above analysis for the sole purpose of showing that even if it had a valid lien, prior valid liens exhaust the proceeds.

10. Had IDOR provided evidence of its assertion that the first quarter 1994 taxes were assessed on April 23, 1994, IDOR would have had priority over the IRS for these taxes. This would have created an intriguing problem because there would be circuitous priority among the taxing authorities: IDOR's first quarter 1994 assessments would have had priority over the IRS, which has priority over FNBBI, which in turn has priority over IDOR. For examples of cases that resolved such circuitous priority dilemmas, see *New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank*, 388 F.2d 156 (4th Cir.1967); *Great American Insurance Co. v. Department of Revenue*, 226 F.Supp. 512 (N.D.Ill. 1963).

including any lien IDOR may hold, and the valid judgment lien are, therefore, as follows:

| Holder | Priority | Amount |
|--------|----------|--------|
| IDES | First Priority | $ 8,593.27 |
| IRS | Second Priority | $59,700.40 |
| FNBBI | Third Priority | $40,322.00 |
| IDOR | Fourth Priority | $ 7,916.49 |

### CONCLUSION

Shirley, as joint tenant in the property is entitled to $83,439.03, which constitutes one half the net proceeds from the sale of the Property, after the total deductions from the sale price of $28,121.94, as set forth herein. The Trustee may recover $12,113.01 from the proceeds brought into the estate as reasonable and necessary costs and expenses of preserving and disposing of the Property for the benefit of the secured creditors.

Of the remaining proceeds, IDES holds the first priority lien for both its liens recorded against the DEBTOR totalling $8,593.27; the IRS holds a second priority lien in the amount of $59,700.40; FNBBI holds a third priority lien in the amount of $40,322.0, which will result in FNBBI only receiving partial payment of its lien claim. IDOR may hold a fourth priority lien in the amount of $7,916.49, but the Court declines to determine the validity of that lien because even if IDOR has a valid lien, the prior valid liens exhaust the proceeds.

The liens of Citibank and Old Kent Bank both fail for lack of perfection, and they therefore hold general unsecured claims against the estate for $507.19 and $33,603.54, respectively.

### ORDER

Counsel for Trustee is directed to prepare a Judgment Order, in accordance with the Memorandum Opinion, to be submitted to the Court, on prior notice, on December 9, 1996 at 10:30 a.m.