# Illinois Official Reports

## Appellate Court

*In re Marriage of Campbell*, 2017 IL App (2d) 170171

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF PAMELA CAMPBELL, Petitioner-Appellant, and DONALD F. CAMPBELL, Deceased, Respondent (Janet Campbell, Beneficiary-Appellee). |
| District & No. | Second District<br>Docket No. 2-17-0171 |
| Filed | October 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 07-D-114; the Hon. Robert E. Douglas, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Colette Luchetta-Stendel, of Lombard, for appellant.<br><br>Jessica S. Naples, of Davi Law Group, LLC, of Wheaton, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Burke and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner, Pamela Campbell, placed a lien for unpaid child support on property that was held in trust for the benefit of her ex-husband, Donald. After Donald's death, the subsequent beneficiary of the trust, Donald's mother, Janet Campbell, successfully moved to have the trial court release the lien. Pamela now appeals from the trial court's order granting the release of the lien. We reverse and remand for further proceedings.

## I. BACKGROUND

¶ 2

¶ 3     The marriage of Donald and Pamela Campbell was dissolved in 2009. Donald and Pamela were awarded joint custody of their three daughters, with residential custody awarded to Pamela. Pursuant to the judgment of dissolution, Donald was ordered to pay unallocated child support and maintenance to Pamela. In addition, Donald was to reimburse Pamela for the cost of medical insurance, which she maintained through her employment, and provide proof of life insurance with the children named as beneficiaries.

¶ 4     In April 2011, the trial court ordered the cessation of the unallocated child support and maintenance, pursuant to the judgment of dissolution. Donald was to pay child support for their youngest child only, in an amount to be determined at a future hearing. In addition, the reimbursement for medical insurance was to be resolved at that future date. Evidence of the required life insurance was provided.

¶ 5     In June 2011, the trial court set the child support obligation at $1012 per month, retroactive to April 1. However, the issue of reimbursement for medical insurance premiums was reserved for a future date.

¶ 6     In April 2012, Pamela petitioned the trial court for a rule to show cause. Donald was ordered to explain his failure to provide proof of life insurance annually and to pay child support. The trial court found Donald in contempt for failing to provide proof of life insurance to Pamela. Donald was given the opportunity to purge the contempt by bringing proof of insurance to court on May 23. However, on May 12, Pamela filed another petition for a rule to show cause, alleging that Donald had failed to (1) pay child support in the amount of $15,005.42, (2) pay medical insurance premiums of $6960, (3) release some funds to help with college tuition, and (4) divide certain marital assets. Donald failed to appear at the next court date, and a writ of body attachment was issued.

¶ 7     Pamela then sought a temporary restraining order restraining Donald from withdrawing funds from his retirement account. She also sought payment of more than $17,000 in past-due child support and the release of an investment account to pay for college expenses. Donald appeared in court, and the matter was set for hearing on July 20, 2012. After that hearing, Donald was purged of the contempt regarding life insurance coverage. He was also ordered to cash out certain life insurance policies for payment of college expenses, to direct that certain investments be rolled over into Pamela's account, pursuant to the marital settlement agreement, and to make reasonable efforts to find employment or pursue Social Security benefits for his mental illness. The court found that Donald owed $15,005.42 in past-due child support.

¶ 8     In the meantime, Pamela recorded a lien on Donald's home at 1032 W. 32nd Street in Chicago (the property) in the amount of $24,530 as of June 26, 2012, for unpaid child support

and medical insurance. The amount would increase by $1265 per month. The property had been awarded to Donald in the judgment of dissolution and was the *res* of a Chicago Land Trust Company land trust. Pamela certified that she mailed a copy of the lien claim to Donald by certified mail, return receipt requested, on June 26.[1]

¶ 9    Donald died in July 2013. On November 7, 2016, Janet, as executor of his estate, filed an emergency motion to release Pamela's lien. Janet alleged that, in attempting to sell the property, she discovered Pamela's lien, which prevented the sale to a *bona fide* purchaser who was ready and able to buy the property. According to Janet, there was no court order finding an arrearage against Donald of $24,530, as the lien claimed; the court had found an arrearage of only $15,005.42 and had never entered a judgment setting an arrearage amount for Pamela to record against the property. In addition, there was no court order under which Donald was required to contribute to medical insurance premiums. Finally, Donald had made payments toward his arrearage, and a review of the child support account maintained by the Du Page County circuit court clerk for this case provided that Donald had no child support arrearage. Thus, Janet sought an order requiring Pamela to execute a release of the lien or entering a judicial release of the lien. Per the notice of motion, the case was set for November 10.

¶ 10    Pamela failed to appear on November 10. The trial court found that there was nothing in the court file or record indicating an arrearage of $24,530; "at best," the court file showed an arrearage of $15,005.42 as of July 20, 2012. In addition, a certified child support account summary from the office of the circuit court clerk showed a zero balance owed. Therefore, the trial court granted the emergency motion. One week later, on Pamela's motion, the default order of November 10 was vacated; Pamela was given one week to respond to the emergency motion, and the case was set for hearing.

¶ 11    Janet filed a petition to join her as a necessary party and for leave to file an appearance, which the trial court granted on January 27, 2017. The trial court also ordered Janet to file any responsive pleadings by January 31 and set the case for hearing on February 3.

¶ 12    On February 2, Janet filed an amended motion to release the lien. Among other arguments, this amended motion raised for the first time the argument that, during his lifetime, Donald possessed only a beneficial interest in the property, which was considered personal property, not real property. The lien against the property was thus improper. The proper method to perfect a lien on intangible personal property was via a citation to discover assets. The motion also argued that, if the lien was properly perfected, Pamela would be entitled to, at most, $22,625.59.

¶ 13    After hearing argument, the trial court granted Janet's amended motion and released the lien. The court stated that, upon Donald's nonpayment of child support, judgments became due to Pamela in the amount of $1012 for each month that payment was not made. Each of those judgments created, by operation of law, a lien against Donald's property, whether real or personal. However, Donald owned a beneficial interest in the property, which was held in trust. Although the lien existed, the "mere filing of a notice of lien against the property did not perfect the lien," pursuant to section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2016)). According to the court, Pamela "had the opportunity to come before

---

[1]In October 2012, the Illinois Department of Healthcare and Family Services (Department) placed a lien on the same property, alleging past-due support of $12,644.94 as of September 30. The Department subsequently recorded a release of lien in September 2016.

the Court, memorandize the judgments which she had and then file a citation to discover assets as required by 1402, and ask the Court to apply a lien to the beneficial interest in the land trust. That was not done." The court found that, as Donald was now deceased, "the provisions for transfer set up to successor beneficiaries kicked in and they are now the beneficial owners of the property." Even though it found that the lien "was not properly placed," the court did question whether Janet, as the beneficial owner of the property, had standing to ask for the removal of the lien. The court asked Janet's counsel who had the direction of the trust; when informed that counsel believed that the beneficiary held the power of direction, the court released the lien.

¶ 14  Pamela's counsel complained that she had not been given adequate time to respond to Janet's amended motion, as Janet had filed it only the day before. When told by the court that she had been given the opportunity to argue, counsel responded, "You had argument, you gave me 45 minutes to research and no time to write a response." The bailiff then ended the colloquy.

¶ 15  Pamela immediately filed a motion to reconsider, arguing that she had not been given an appropriate opportunity to review and respond to Janet's amended motion. Janet moved to strike and dismiss the motion. Pamela then filed an amended motion to reconsider, raising additional arguments. Janet then filed an amended, "emergency" motion to strike and dismiss. Following a hearing, the court granted Janet's amended motion to strike but required Janet to place in escrow the sum of $24,530 to be held for 30 days or until an appeal, if filed, was resolved. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17  Pamela contends that the trial court erred when it held that she failed to properly perfect her lien for past-due child support. The facts here are not in dispute, making this a question of law; as such, we review this question *de novo*. See *In re Marriage of Thompson*, 357 Ill. App. 3d 854, 857 (2005).

¶ 18  Section 505(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(d) (West 2016)) provides:

"(d) Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced. Notwithstanding any other State or local law to the contrary, a lien arises by operation of law against the real and personal property of the noncustodial parent for each installment of overdue support owed by the noncustodial parent."

¶ 19  The trial court acknowledged that, as a result of Donald's nonpayment of child support, judgments for missed support payments became due to Pamela and that each of those judgments created, by operation of law, a lien against Donald's property, whether real or personal. However, the court concluded that the "mere filing of a notice of lien against the property did not perfect the lien," pursuant to section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2016)).

¶ 20     Section 2-1402 of the Code provides for supplementary proceedings, initiated by a citation to discover assets, as a mechanism by which a judgment creditor can discover the assets of a judgment debtor or third party and apply those assets to satisfy the judgment. *Schak v. Blom*, 334 Ill. App. 3d 129, 132-33 (2002). In general, when the judgment debtor has an interest in a land trust, a citation to discover assets, validly served on both the judgment debtor and the trustee of the land trust, creates a lien on the debtor's interest. *Id.* at 133.

¶ 21     We first note that the parties disagree as to the nature of Donald's interest in the property. While acknowledging that a judgment lien was created by operation of law, Janet argues that Pamela could not properly attach her lien to the property. According to Janet, the property is the *res* of a land trust; when Pamela recorded her lien, Donald was only the holder of the trust, thus possessing only a beneficial interest in the property, which is considered an interest in personal property. See *First Federal Savings & Loan Ass'n of Chicago v. Pogue*, 72 Ill. App. 3d 54, 56 (1979) ("A beneficial interest in an Illinois land trust is an interest in personal property and not a direct interest in the real estate *res* of the trust."). Although a judgment becomes a lien on real estate when evidence of the judgment is recorded in the county in which the real estate is located, registration of a judgment against the beneficiary of a land trust in the county where the trust real estate is situated does not impress the real estate with a judgment lien. *Id.* According to Janet, the only way to attach a lien against personal property is to serve a citation to discover assets, pursuant to section 2-1402(k-10) of the Code (735 ILCS 5/2-1402(k-10) (West 2016)), on both the debtor and the trustee of the land trust.

¶ 22     Pamela argues that, as sole beneficiary of the land trust, Donald "owned" the property. According to Pamela, although a beneficiary's interest in a trust is said to be personal property and not a direct interest in the real estate *res* of the trust, every attribute of real property ownership, except title, is retained by the beneficiary. She also asserts that courts have recognized that the beneficiary is the owner of, and has an interest in, the real estate *res* of the trust for some purposes. See *IMM Acceptance Corp. v. First National Bank & Trust Co. of Evanston*, 148 Ill. App. 3d 949, 954-55 (1986); see also *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 488 (1979). Thus, to the extent that any lien against the property was required to be perfected, she was not required to serve a citation to discover assets, as required by section 2-1402(k-10) of the Code, but needed only to file the lien with the county and send notice to Donald, as she did.

¶ 23     We agree with Pamela that, "for some purposes," courts have found that a beneficiary of a land trust is the owner of, and has an interest in, the real estate *res*. See *IMM Acceptance Corp.*, 148 Ill. App. 3d 949 (holding that the transfer of a beneficial interest in a land trust is subject to the statute of frauds); see also *Chicago Title & Trust Co.*, 75 Ill. 2d 479 (beneficiary of a land trust is the "owner" of the real estate for purposes of real estate taxation); *Department of Conservation v. Franzen*, 43 Ill. App. 3d 374 (1976) (beneficiary of a land trust had an "interest in property" for purposes of filing a cross-petition in an eminent domain proceeding). However, not all circumstances have been amenable to such a conclusion. See *Bennett v. Chicago Title & Trust Co.*, 404 Ill. App. 3d 1088 (2010) (declining to find a beneficiary's interest in real estate for purposes of terminating a custodianship); *In re Estate of Crooks*, 266

Ill. App. 3d 715 (1994) (rejecting the argument that a quitclaim deed could convey a beneficial interest).[2]

¶ 24        In any event, we need not decide the nature of Donald's interest in the property for purposes of the attachment of the lien. Section 505(d) of the Dissolution Act provides that, "[n]otwithstanding any other State or local law to the contrary, a lien arises by operation of law *against the real and personal property* of the noncustodial parent for each installment of overdue support owed by the noncustodial parent." (Emphasis added.) 750 ILCS 5/505(d) (West 2016). Thus, the nature of Donald's property interest is irrelevant; the lien arose against all of Donald's property, no matter how it is characterized. Indeed, at oral argument, Janet conceded that Pamela had a judgment and a lien on the "personal end" of the trust and that the trustee was put on constructive notice of the lien by the filing of the lien.

¶ 25        The question remains, however, whether the lien was "perfected." The trial court concluded that the "mere filing of a notice of lien against the property did not perfect the lien," pursuant to section 2-1402 of the Code. Janet argues that the only way to perfect a lien against an interest in a land trust is to serve a citation to discover assets, pursuant to section 2-1402(k-10) of the Code (735 ILCS 5/2-1402(k-10) (West 2016)), on both the debtor and the trustee of the land trust. See, *e.g.*, *Rodriguez v. Citibank, F.S.B.* (*In re Nowicki*), 202 B.R. 729, 737 (Bankr. N.D. Ill. 1996) ("Thus, under 740 ILCS 160/8, the judgment creditor may follow the citation procedure set out in 735 ILCS 5/2-1402 to perfect a lien in intangible, personal property, *i.e.* the beneficial interest in a land trust, even though[ ] the debtor could not do so.").

¶ 26        However, the citation serves to *create* the lien on personal property: "The judgment or balance due on the judgment *becomes a lien* when a citation is served in accordance with subsection (a) of this Section." (Emphasis added.) 735 ILCS 5/2-1402(m) (West 2016). In this case, a citation to discover assets would be redundant, as the lien had already been created by operation of law pursuant to section 505(d) of the Dissolution Act. Further, this lien was created "[n]otwithstanding any other State or local law to the contrary." 750 ILCS 5/505(d) (West 2016). Thus, no further action, including notification of a third party (such as the trustee), was required in order to impose this lien on Donald's personal and real property. No such third-party notification is contemplated by section 505(d) of the Dissolution Act, and we will not read such a requirement into it.

¶ 27        Recording a lien in the chain of title gives a trustee or any potential purchaser or creditor notice of the existence of the lien. See *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill. App. 3d 512, 515-16 (1988). Recording the lien is important in determining the priority of multiple liens on a piece of property. *Id.* at 514 ("The underlying principle regarding priority of mortgage liens is that the first party to give notice of its lien on real property has the senior lien. Thus, where any party has actual or constructive notice of a prior lien, it will ordinarily take subject to that lien."). It is also important if the lienholder attempts to foreclose on the property or levy and execute on the underlying judgment. In such circumstances, notice to the trustee is necessary. However, such was not the case here. Pamela did not in any way attempt to obtain the property or liquidate it in order to satisfy the lien. Janet attempted to sell the property, and it

---

[2]We also note that, when asked by the trial court who had the direction of the trust, Janet's counsel stated that the beneficiary held the power of direction. The trial court then released the lien. This seems contradictory; power of direction would seem to demonstrate ownership such that service on the trustee would be unnecessary.

was then that Janet, the trustee, and the potential purchaser became aware of the recorded lien. No other liens were involved. Janet fails to explain why giving notice to the trustee at the time of recording the lien was required for perfecting the lien in this situation. In any event, Janet acknowledged at oral argument that there was a recording and that the trustee was put on constructive notice of the lien. Thus, the argument is moot.

¶ 28 At oral argument, Janet also contended that any interest that Donald had in the property was extinguished when he died, as Donald's interest was in personal property. We note that Janet did not raise this contention in her appellate brief. Points not argued in a brief are forfeited and cannot be raised at oral argument. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (applied to appellees' briefs through Illinois Supreme Court Rule 341(i) (eff. Jan. 1, 2016)); see also *Vancura v. Katris*, 238 Ill. 2d 352, 372 (2010). This contention is forfeited. We further note that section 20-19 of the Probate Act of 1975 provides in part that, in general, when any beneficial interest under a trust of real estate that is subject to an encumbrance passes by the terms of a trust agreement, the beneficiary to whom the beneficial interest passes takes it subject to the encumbrance. See 755 ILCS 5/20-19 (West 2016). Although this is not a probate situation, the continued vitality of Pamela's lien on the property after Donald's death is manifest. Even if this contention were not forfeited, we would find it meritless.

¶ 29 Pamela placed a valid lien on Donald's property and notified Donald about the lien. This lien was still valid when Janet attempted to sell the property. The trial court erred in granting Janet's amended motion to release the lien, and we reverse that judgment. As Janet's amended motion also contested the amount to which Pamela would be entitled if the lien were found to be valid, we must remand the cause for such a determination.

¶ 30                                    III. CONCLUSION

¶ 31 For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

¶ 32 Reversed and remanded.